Robert ALANIZ, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 13–92–085–CR.

Court of Appeals of Texas, Corpus Christi.

Oct. 7, 1993.

Charles Manning, Beeville, for appellant.

C.F. Moore, Jr., Dist. Atty., Beeville, for appellee.

Before SEERDEN, C.J., and PAUL W. NYE,[1] and GILBERTO HINOJOSA, JJ.

## OPINION

SEERDEN, Chief Justice.

Appellant was indicted for murdering Guadalupe (Lupe) Salinas. A jury found appellant guilty, and the trial court assessed punishment, enhanced by two prior felony convictions, at 60 years in prison. We reverse and remand.

■ In his first point of error, appellant contends the trial court erred in not instructing the jury on the law of self-defense against multiple assailants. The trial court's charge included a self-defense instruction, but it was based only on the victim being the

1. Former Chief Justice, retired April 30, 1993.

assailant. The State responds initially that appellant did not preserve error.

The record shows that appellant submitted a set of requested instructions in writing but did not request a charge on multiple assailants. Only after the trial court had granted most of appellant's written requested instructions did appellant contend that the self-defense charge should include language regarding multiple assailants. The State contends that appellant's latter mention of the self-defense charge did not constitute an objection to the charge and that the trial court did not rule on that objection. We disagree. Appellant specifically objected that the proposed self-defense instruction did not contain the names of two other persons who were acting with Lupe Salinas. Appellant specifically identified the others and stated how he would insert the two other names in the self-defense instruction. Appellant then also objected on other grounds. At the conclusion of appellant's several objections, the trial judge stated that she was overruling the objections. The procedure followed preserved the alleged error in compliance with the Code of Criminal Procedure. *See* Tex. Code Crim.Proc.Ann. arts. 36.14–.16 (Vernon Supp.1993 & Vernon 1981). We now turn to the merits of appellant's complaint.

■ The facts show that a number of persons socialized with Silvio Duenes and Andrea Romo at their home on the evening of May 25, 1991. Except for appellant, all of the adults who were present testified either for the State or the defense. Most of the witnesses saw only portions of the incident which began outside the house, may have continued inside, and then concluded outside. As the events are reported through seven different witnesses, we have attempted to generally summarize the testimony rather than recount each witness's testimony. We have summarized the events favorably to appellant, taking into consideration the standard of review which requires the submission of a self-defensive issue if the issue is supported by any evidence, whether strong, weak, unimpeached, or contradicted. *See Frank v. State,* 688 S.W.2d 863, 868 (Tex.

Crim.App.1985).[2]

It is undisputed that appellant stabbed Lupe Salinas around midnight. When the confrontation began, Lupe Salinas, his brothers Jesse and Mario, Juan DeLeon, Silvio Duenes and appellant were outside the house. Andrea Romo and Sylvia DeLeon were inside. Roger Franco, who had been present earlier, was at his home across the street from Romo's. Franco watched a portion of the incident through his binoculars.

The participants, in what turned out to be a brawl between the Salinases and the others, had been at the house off and on during the evening. Throughout the evening, Lupe and appellant were not getting along well. Each said bad things about the other, and they argued. One witness testified that the Salinases were annoying appellant. At some point it became apparent that Lupe and appellant were going to fight each other. Jesse told appellant to fight only with his hands, but appellant said he did not like to fight that way. He told Jesse that he had a .45 calibre pistol in his boot. Appellant had earlier displayed a knife to some of those present and directed their attention to its sharpness.

Around midnight, Jesse was talking with Mario by his truck when he saw appellant and Lupe push each other. He then saw appellant pull out his knife and slash Lupe. Jesse ran up, and appellant cut two of Jesse's fingers. Mario got out of his truck and grabbed a hoe. Mario threw a piece of a stick at appellant. Silvio told appellant, "There is (sic) three of them and they will kill you," and appellant and Silvio went into the house. When appellant came into the house, he told Romo that "they [the Salinases] are trying to kill me."

It is disputed whether Juan, who was highly intoxicated, ran. There is some testimony that Juan was passed out and lying down. At any rate, Mario hit Juan with the hoe, and Jesse kicked Juan. The Salinases left Juan lying unconscious on the ground. After attacking Juan, Jesse and Mario ran toward the house where they yelled for appellant to come out. Appellant would not come out.

He just stood in the door holding his knife. All three Salinases then pushed their way into the house. Around this time, Silvio allegedly hit Mario in the head with a machete. Different witnesses saw Jesse come into the house with either a gun or a hammer. Mario came in with his hoe. Lupe came in with a pipe wrench.

Inside the house, Lupe fought with appellant. Lupe jumped on appellant, and appellant stabbed Lupe. According to one witness, Lupe got stabbed "a bunch of times." After Lupe said he had been cut, he fell down, and Jesse dragged him out. Silvio tried to help Lupe, but he gave up because Jesse was "trying to get to me." Silvio ran back into the house.

Outside, Jesse tried to assist Lupe. Mario tried to get Lupe in his truck but could not, so Mario drove his truck to a store in Skidmore to summon help. Jesse ran across the street to Roger Franco's house to get help.

At this point, after Mario and Jesse had left Lupe, Silvio saw appellant go back outside and stab Lupe several more times. This stabbing occurred when Lupe was lying face up on the ground. Roger Franco said that as Jesse was coming toward his house, he saw appellant, on his knees, moving his hand like he was stabbing someone lying on the ground. He saw Silvio pushing appellant away from the body.

When Jesse returned to where Lupe was, Lupe had blood all over his face and arms. Then, apparently by happenstance, Pete Salinas came by in his truck, and he and Jesse took Lupe to get medical attention. Lupe died shortly thereafter.

Dr. Joseph Rupp performed an autopsy on Lupe. He detected thirteen stab wounds on Lupe. Seven of the wounds were to Lupe's left arm and not of the fatal type. Lupe had two fatal-type wounds to the left chest, and one skin wound to the right chest. He had two abdominal wounds. One of these produced protruding fat and intestines, but was not a fatal-type wound. The other was po-

**2.** We would summarize the facts much differently if the evidence were to be viewed most favor- ably to the State.

**532**

tentially fatal, but not immediately incapaci-tating. Lupe's thirteenth stab wound was to his back. Rupp opined that the cause of death was multiple stab wounds.

Appellant contends that there is evidence that an attack by all three Salinas brothers in the house led to appellant fatally stabbing Lupe and so entitled appellant to a self-defense charge against multiple assailants. We agree.

Regardless of who started the initial confrontation, there is evidence that appellant, who was armed with a knife and possibly a gun, quickly retreated into Romo's house. There is no evidence that appellant attempted to attack anyone else with his knife or use his gun. The three Salinas brothers taunted appellant to come out. When he did not, the three brothers pushed their way into the house. Each was carrying a weapon, and Lupe proceeded to jump on appellant.

In addition to pushing their way into the house, there is evidence that the Salinas brothers were acting together and that appellant's life was in danger. That is, the Salinases were each still armed, and Silvio had warned appellant that the Salinases were going to kill him. The Salinas brothers had just finished beating and kicking Juan, who was intoxicated and passed out. Earlier in the evening, the Salinases had been annoying appellant. When appellant came into the house, he told Romo that he thought the Salinases were going to kill him. Accordingly, there is evidence that the Salinas brothers were acting together during the confrontation, that appellant retreated into the house but was pursued by the Salinases, that appellant thought his life was in danger, and that the Salinases were armed with a gun and other weapons.

■ A person is justified in using deadly force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful deadly force if a reasonable person in the actor's situation would not have retreated. *Frank,* 688 S.W.2d at 868; Tex.Code Penal Code arts. 9.31–.32 (Vernon 1974 & Supp.

1993). A charge which is confined only to the right of self defense against the deceased is too restrictive if there is evidence that more than one person attacked the defendant. *Frank,* 688 S.W.2d at 868; *Sanders v. State,* 632 S.W.2d 346, 348 (Tex.Crim.App. 1982). A defendant is entitled to a charge on the right of self-defense against multiple assailants if there is evidence, viewed from the accused's standpoint, that he was in danger of an unlawful attack or a threatened attack at the hands of more than one assailant. *Frank,* 688 S.W.2d at 868.

■ The State asserts that, as appellant did not testify, there is no evidence from his standpoint that he believed he was being attacked by Jesse and Mario Salinas. We disagree. While it is rare for self-defense to be raised when the defendant fails to testify, a non-testifying defendant may still be entitled to a charge on self-defense. *Smith v. State,* 676 S.W.2d 584, 585–86 (Tex.Crim.App. 1984). The circumstances here, viewed from appellant's standpoint, show that he was under attack or attempted attack from the three Salinas brothers and he thought they were going to kill him. Accordingly, the trial court erred in overruling appellant's objection regarding multiple assailants. *See McCuin v. State,* 505 S.W.2d 831, 832 (Tex. Crim.App.1974).[3]

■ We next turn to whether the trial court's error was harmless. Under *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App. 1984), if an error in the charge was the subject of a timely objection, as here, reversal is mandated if there was "some harm" to the accused from the error. In determining whether there was "some harm," the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, argument of counsel, and any other relevant information revealed by the record of the trial as a whole. *Id.*

The primary evidence in this case was presented through seven different witnesses, all of whom told different stories. Some of the stories varied widely. For example, the Salinases denied being inside the house at anytime, while other witnesses testified about

**3.** Unlike appellant, McCuin testified in his own defense.

an extensive confrontation inside. Considerable blood, Lupe's wrench, and portions of a hoe were found inside the house.

While there is considerable testimony to support the jury's verdict, there is also considerable testimony to show that appellant, while inside the house, was defending himself against an attack from the Salinas brothers. Overall, this case turned on the credibility of the witnesses and which portions of whose testimony the jury believed.

We recognize that there is uncontroverted testimony that appellant stabbed Lupe outside the house on the ground following the confrontation in the house and, as such, the facts of any confrontation inside the house may not have been that important to the jury's verdict. Nonetheless, we cannot assume that just because a fact is not contradicted it is believed by the jury. *See Marlow v. State*, 537 S.W.2d 8, 10 (Tex.Crim.App. 1976). The jury is the exclusive judge of the credibility of the witnesses, and it may accept or reject any part or all of the testimony of the witnesses. *Johnson v. State*, 571 S.W.2d 170, 173 (Tex.Crim.App.1978). As the jury may have rejected the testimony that appellant continued to stab Lupe outside the home, we cannot say that any omission of the correct charge was harmless. We also note that the trial court instructed the jury on the law of voluntary manslaughter, and we cannot say what effect the attack from multiple assailants, rather than simply a single assailant, might have had on the jury's assessment of whether appellant, if he went back outside to attack Lupe, was acting under sudden passion rising from an adequate cause.

In addition to the charge and the evidence, we also consider the argument in addressing harm. As the trial court's instructions failed to include a multiple assailant theory for the jury's consideration, the prosecutor was not required to, and did not, discuss the evidence concerning the other Salinas brothers and the weapons they might have used against appellant. Had the State been required to prove that appellant was not defending himself from all three Salinas brothers, rather than merely from the already-wounded Lupe, it could have been more difficult to persuade the jury that appellant was guilty of murder.

We find that appellant suffered "some harm." Accordingly, we sustain appellant's first point of error. We need not address appellant's other points. The judgment of the trial court is reversed, and the cause is remanded.

PAUL W. NYE, Former Chief Justice, not participating.