**Nateese Lamon JONES, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–96–474–CR.**

Court of Appeals of Texas,
Fort Worth.

Feb. 19, 1998.

Mike DeGeurin, Houston, for Appellant.

John B. Holmes, Jr., District Attorney, William J. Delmore, III, Assistant District Attorney, Houston, for Appellee.

Before CHARLES F. CAMPBELL (Sitting by Assignment), RICHARDS and CHUCK MILLER (Sitting by Assignment), JJ.

## OPINION

PER CURIAM.

Appellant was convicted by a jury of the offense of murder. The jury assessed his punishment at confinement for life in the Texas Department of Criminal Justice, Institutional Division. In this appeal, appellant raises six points, complaining of the court's charge to the jury, the failure of the trial court to admit an extra-judicial statement of appellant into evidence, and the trial court's admission at trial of the victim's impact testimony over appellant's objection. We affirm.

### Factual Background

Although appellant does not lodge either a legal or factual insufficiency of evidence claim, a brief summary of the facts is helpful to our disposition of some of the relevant points of error. Viewed in a light most favorable to the verdict, the record shows that on the night of June 24, 1991, the victim Rodney Coss and a friend, Anthony Nylon, went to a night club in Houston. Two acquaintances of the victim, Hatchet and Foster, were also at the club. As all four men were leaving the club at closing time, Foster exchanged angry words with an unidentified male, and the exchange shortly escalated into a fight in the parking lot of the club. Hatcher attempted to pull Foster away from the melee. Coss walked up to the scene of the scuffle and asked "[w]hat's up?" The appellant approached the conflict at about the same time as Coss, responded "[t]his is what's up," and he shot Coss several times with a pistol, ultimately resulting in the death of Coss. Nylon, who approached the scene of the altercation as well, saw appellant fire a shot into Coss and heard several other shots.

A security guard for the club, Paul Allison, was in the parking lot and suspected there would be trouble. He heard five or six shots and saw appellant firing a weapon, while everyone else in the parking lot dropped to the ground. Allison followed appellant to a red car and then participated in the apprehension of appellant at the red car.

Officer Isaac Boney of the Houston Police Department, who was working security at the club that night, heard five or six shots rapidly fired in the parking lot and proceeded to assist Allison in the apprehension of appellant. He got appellant out of the front passenger's seat of a red Hyundai and found a .357 magnum pistol under the seat where appellant was sitting. As appellant was being handcuffed, a man in the crowd that had gathered said "yeah, you shot him," and appellant responded "Yeah I shot the mother fucker, I'll shoot you too." Allison testified that appellant said "I shot him, so what?" An autopsy revealed that Coss had been shot three times, and a ballistics expert testified that two of the bullets taken from the victim's body were fired from the pistol found under the seat occupied by appellant.

The appellant offered the testimony of Deric Williams, who accompanied appellant to the club on the night of the killing. Williams claimed that he was assaulted in the parking lot by someone with a gun and was hit in the head with the gun. In the course of this scuffle, Williams heard eight or nine shots fired, but never claimed to have seen the appellant fire the gun. Williams did not see who appellant shot, and had no idea what the victim was doing when shot.

### Voluntary Manslaughter

In his first point, appellant claims the trial court erred in failing to include a lesser-included instruction on voluntary manslaughter.[1] Appellant does not cite us to any case law dealing with voluntary manslaughter. Instead he relies on case law that discusses the quantum of evidence necessary to secure an instruction on a lesser-included offense generally.

In *Rousseau v. State*, 855 S.W.2d 666 (Tex. Crim.App.), *cert. denied*, 510 U.S. 919, 114

---

1. Before the 1993 revision of the Penal Code, section 19.04(a) provided that an accused committed the offense of voluntary manslaughter if he committed an offense "that would constitute murder under Section 19.02 of the Code, except that he caused the death under the immediate influence of sudden passion arising from an adequate cause." Act of May 29, 1993, 73 rd Leg., R.S., ch. 900, §§ 1.18 & 1.19, 1993 Tex. Gen. Laws 3589, 3708 (repealed 1994) (current version at TEX. PENAL CODE ANN. § 19.02 (Vernon 1994)).

S.Ct. 313, 126 L.Ed.2d 260 (1993), the Court of Criminal Appeals set out the current factors to be considered by the trial court for the inclusion of a lesser-included charge:

> [T]he appropriate test to be applied in determining whether a defendant is entitled to a charge on a lesser included offense is the following: first, the lesser included offense must be included within the proof necessary to establish the offense charged, and second, some evidence must exist in the record that would permit a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser offense. [Emphasis omitted].

*Id.* at 672–73.

■ Fear, standing alone, does not raise the issue of sudden passion. *See Fry v. State,* 915 S.W.2d 554, 559 (Tex.App.—Houston [14th Dist.] 1995, no pet.). The evidence produced must be directly germane to the lesser-included offense before an instruction on the lesser-included offense is warranted. *See Bignall v. State,* 887 S.W.2d 21, 24 (Tex. Crim.App.1994).

The evidence adduced at trial here does not demonstrate appellant was in the throes of actual, subjective passion. Although testimony was presented raising the issue of self-defense, this alone does not entitle appellant to a charge on voluntary manslaughter. *See Acosta v. State,* 742 S.W.2d 287, 288 (Tex. Crim.App.1986). There is no evidence in the record that appellant's "state ever rose beyond a bare claim of fear or was so strong and overpowering that it rendered him incapable of rational thought and collected action, as required for a jury instruction on voluntary manslaughter." *See Carrillo v. State,* 889 S.W.2d 501, 504 (Tex.App.—Houston [14th Dist.] 1994, no pet.). The trial court did not err in failing to charge the jury on voluntary manslaughter. Point one is overruled.

### Involuntary Manslaughter and Criminally Negligent Homicide

■ In points two and three, which we consolidate for the sake of brevity, appellant complains that the trial court failed to give the jury charges on the lesser-included offenses of involuntary manslaughter and criminally negligent homicide.

■ Both involuntary manslaughter and criminally negligent homicide are lesser included offenses of murder, so the first prong of the *Rousseau* test is met. *See Burnett v. State,* 865 S.W.2d 223, 228 (Tex.App.—San Antonio 1993, pet. ref'd). The distinction between murder, involuntary manslaughter, and criminally negligent homicide lies in the culpable mental state accompanying the defendant's homicidal act. *See id.* Implicit in the statutory definitions of these offenses is the idea that the defendant must not have intended the resulting death, nor been aware that a death was reasonably certain to occur. *See id.* at 228–29. Therefore, in order for a defendant to be entitled to a jury charge on involuntary manslaughter or criminally negligent homicide, the record must contain "some" evidence that the defendant did not intend the resulting death or know that it was reasonably certain to occur. *Id.* A specific intent to kill may be inferred from a defendant's use of a deadly weapon per se. *See id.* at 230. A firearm, i.e., a handgun, is a deadly weapon per se. *S ee* TEX. PENAL CODE ANN. § 1.07(a)(17)(A) (Vernon 1994).

In this case, appellant fired a number of rounds of ammunition from a .357 magnum pistol at a distance of about two feet from the victim. The testimony of appellant's witness, Williams, did not support the notion that appellant was reckless or negligent because Williams never saw what happened nor did he see or hear the victim. The testimony of the State's witnesses established an intentional killing, and the appellant's brief contains what at best could be described as speculation as to what the mental or culpable mental state of appellant "might" have been at the time of the shooting. Appellant does not meet the second prong of the *Rousseau* test because there is no evidence at all of either reckless or criminally negligent conduct. The trial court did not err in failing to charge on voluntary manslaughter and criminally negligent homicide. Points two and three are overruled.

## Self–Defense and Defense of Third Party

In his fourth point, appellant avers that the trial court erred in failing to give an instruction to the jury on appellant's right to defend himself or a third party against multiple assailants.[2] Appellant objected to the trial court limiting the self-defense charge to the words and conduct of Rodney Coss, the victim. Appellant argued at trial that there were others involved in a "conspiracy" to harm either appellant or Deric Williams, and that the words and conduct of these other unidentified persons should have been included in the charge on self-defense.

The Court of Criminal Appeals has held that a jury charge that is confined only to the right of self-defense against the deceased is too restrictive if there is evidence that more than one person attacked the defendant. *See Frank v. State*, 688 S.W.2d 863, 868 (Tex.Crim.App.1985). Accordingly, a defendant is entitled to a charge on the right of self-defense against multiple assailants if the evidence is such, that viewed from the defendant's standpoint, he was in danger from an unlawful attack or threatened attack from more than one assailant. *See id; see also Alaniz v. State*, 865 S.W.2d 529, 532 (Tex. App.—Corpus Christi 1993, no pet.). In determining whether evidence was presented that raises a defensive charge, all evidence presented at trial must be considered, whether it is strong, weak, unimpeached, or contradicted. *Id.* at 530.

In both *Frank* and *Alaniz*, the defendant testified and a scenario was raised that showed multiple assailants advancing on the defendant, and there was testimony that the defendant feared these multiple assailants. In the instant case, the evidence showed that Coss, the victim, walked up on a scuffle that was already in progress and inquired about what was happening. He was almost instantaneously shot and killed by appellant. The testimony of Deric Williams in no way contradicted this version of the facts because he did not see who fired shots, who was shot, or know why shots were even fired. There was no evidence presented that the victim and appellant knew each other, that the victim was armed, or that appellant was shooting at some "conspirator" other than Coss. There simply was *no* evidence raised that multiple assailants were present or were feared by the appellant. The trial court, apparently out of an abundance of caution, correctly charged the jury under sections 9.32 and 9.33. Point four is overruled.

### Out of Court Statement

In point five, appellant claims that the trial court erred in failing to admit an extra-judicial statement given by appellant to Officer Boney approximately twenty minutes after appellant was arrested.[3] Appellant's statement proffered into evidence was:

About 8 people was beating up my home-boy and one of them hit him in the head with a 9mm; I went to get my gun to get them off of him. I did not mean to shoot anyone, I just wanted them to get off of my home–boy——I wish that I could bring him back, God knows I wish I could.

Appellant offered this statement as a statement against penal interest and as a statement made in an "emotional state." Later in the trial, appellant filed a trial brief arguing that the statement was admissible under rule 107, the so-called rule of optional completeness,[4] and appellant continues that argument

---

2. It is apparent from the record that the trial court charged the jury on deadly force in defense of person under section 9.32 and defense of third person, Deric Williams, under section 9.33. TEX PENAL CODE ANN. § 9.32 (Vernon 1994), § 9.33 (Vernon 1994 & Supp.1998).

3. As appellant correctly notes, the State had been allowed to introduce into evidence statements made by appellant contemporaneous with the arrest: "[y]eah, I shot the mother fucker. I'll shoot you, too," and "I shot him, so what?"

4. "When part of an act, declaration, conversation, writing or recorded statement is given in evidence by one party, the whole on the same subject may be inquired into by the other, as when a letter is read, all letters on the same subject between the same parties may be given. When a detailed act, declaration, conversation, writing or recorded statement is given in evidence, any other act, declaration, writing or recorded statement which is necessary to make it fully understood or to explain the same may also be given in evidence. "Writing or recorded statement" includes depositions.

TEX.R.CRIM EVID. 107

in his brief to this court, citing as authority *Austin v. State*, 712 S.W.2d 591 (Tex.App.— Tyler 1986, no pet.).[5]

▮▮▮ The so-called rule of optional completeness takes effect when other evidence has already been introduced but is incomplete and misleading. *See* TEX.R.CRIM. EVID. 107. Its purpose is to allow one side to complete the picture when the opponent has opened the door. *See Reado v. State*, 690 S.W.2d 15, 17 (Tex.App.—Beaumont 1984, pet. ref'd). When the accused does not take the stand, self-serving statements are not admissible where they are merely contradictory to some act or declaration first proffered by the prosecution. *See id.* at 17. Although exculpatory statements of the accused are ordinarily inadmissible, there are some exceptions such as: 1) when the statement is considered res geste of the offense or arrest; 2) part of a statement has been previously proven by the state; or 3) when the statement is necessary to explain or contradict acts or declarations first offered by the state. *See id.*[6] The theory behind the third exception is to prevent the fact finder from being misled or from perceiving a false, incorrect impression upon hearing only part of an act, declaration, conversation or writing. *See id.* at 17.

During the State's presentation of its case-in-chief, no exculpatory or explanatory testimony favoring the appellant was introduced. The State did not mislead the jury or leave the jury with only a partial or incomplete version of the facts. Appellant's extra-judicial, exculpatory statement to Officer Boney some twenty minutes after his arrest did not fall under this exception to the rule of optional completeness. Appellant did not testify in this case, therefore, no opportunity was provided to cross-examine him on his statement. To admit such self-serving hearsay into evidence would allow any defendant to place his version of the facts before the jury without being subject to cross examination. *See All-*

*ridge v. State*, 762 S.W.2d 146, 153 (Tex. Crim.App.1988), *cert. denied*, 489 U.S. 1040, 109 S.Ct. 1176, 103 L.Ed.2d 238 (1989); *Reado*, 690 S.W.2d at 17. We find that the trial court did not err in excluding such a statement. Point five is overruled.

### Victim–Impact Evidence

▮▮▮ In point six, appellant complains that the trial court erroneously admitted victim-impact evidence at the punishment phase of trial. The State introduced, over an objection by appellant under rule 403, the impact of the victim's death on the victim's family, particularly the victim's mother. TEX. R.CRIM. EVID. 403. When asked what effect the victim's death had on the family, the family minister said it had "been a disaster on the family." Appellant argues that rule 403 has not been preempted by article 37.07, section 3(a) of the Code of Criminal Procedure. TEX.CODE CRIM. PROC. ANN. art. 37.07, § 3(a) (Vernon 1981 & Supp.1998). Although appellant did not mention rule 401 in his brief, we will deduce from his trial objection that he challenged the evidence as both irrelevant and overly prejudicial under rule 403.

▮▮▮ Questions of relevance should be left largely to the trial court and will not be reversed absent an abuse of discretion. *See Ford v. State*, 919 S.W.2d 107, 115 (Tex.Crim. App.1996). In reviewing a trial court's relevancy decision by way of the abuse of discretion standard, as long as the trial court's ruling was at least within the zone of reasonable disagreement, an appellate court will not intercede. *See id.*

In *Miller–El v. State*, 782 S.W.2d 892 (Tex. Crim.App.1990), in a non-death penalty case, the Court of Criminal Appeals held that evidence of the degree of injury, even extending into the future, was admissible at punishment because such evidence bore on the defendant's moral blameworthiness. *Id.* at 897.

---

**5.** Appellant's reliance on *Austin* is misplaced. In that case, defendant's counsel "opened the door" to the admissibility of an extra-judicial statement made by the defendant to a police officer that was literally a part of the identical conversation between the defendant and the officer, and if the State had not been allowed to place it in evidence, the jury would have gotten a false picture of the complete facts. No such scenario presents itself in the instant case.

**6.** Appellant relies solely on the third exception and makes no claim as to the other two.

In *Stavinoha v. State,* 808 S.W.2d 76 (Tex. Crim.App.1991), also a non-death penalty case, evidence adduced at punishment concerning the psychological effect of an aggravated sexual assault on the victim and his mother was found to have a bearing on the defendant's moral guilt and personal responsibility and was therefore found to be admissible by the Court of Criminal Appeals. *Id.* at 78–79.

██ The direct question of whether such evidence is relevant in the post-article 37.07, section 3(a) amendment era[7] was only recently answered by one of our sister courts. In *Brooks v. State,* Houston's First Court of Appeals was faced with deciding the relevancy of victim impact testimony very similar to that in the case at bar. *Brooks v. State,* 961 S.W.2d 396 (Tex.App.—Houston [1st Dist.] 1997, no pet. h.). In that case, the victim's sister testified that she almost had a nervous breakdown as a result of her brother's death. That court found such evidence to be relevant under *Miller–El, Stavinoha, Ford* and the amendments to article 37.07, section 3(a) enacted by the legislature in 1989 and 1993. In *Brooks,* the Court of Appeals quoted the following language from *Murphy v. State,* 777 S.W.2d 44 (Tex.Crim.App.1988) (op. on reh'g):

> These factors [circumstances of the offense & the offender] are not "relevant" in the sense that they tend to make more or less probable some identifiable issue of ultimate fact at the punishment phase. Calling circumstances of the offense and the offender "relevant" is really no more than to say we deem that information appropriate for the fact finder to consider in exercise of its unfettered discretion to assess whatever punishment within the prescribed range it sees fit.

*Brooks,* 961 S.W.2d at 398.

Essentially, then, the Court of Appeals adopted this language in finding that "relevancy" in the context of a punishment hearing is a normative process to be employed by the fact finder and is not governed by rule 401 simply because the concept of relevancy in making the punishment decision is not susceptible of the same "relevancy" concept contemplated by rule 401. We agree with this analysis and we so hold.

██ However in *Brooks,* the Court of Appeals did extend the concept embodied in rule 403 to evidence offered at punishment. *Id.* at 400–01. In other words, the trial judge should still weigh evidence offered at punishment to determine if the probative value of the evidence offered is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence. *See id.* We find this analysis to be sound, and we adopt it.

In the instant case, the minister's testimony was relevant in the same sense as the deceased sister's testimony in *Brooks.* The fact that Coss's family suffered a "disaster" is essentially the same as the sister in *Brooks* almost having a nervous breakdown. That testimony served to show the circumstances of the offense and was relevant to sentencing under article 37.07, section 3(a). Although the trial court did not conduct a balancing or weighing on the record under rule 403, because appellant's objection at trial was made under rule 403, we assume the trial court, by overruling appellant's objection, implicitly found that the probative value was not substantially outweighed by any unfair prejudice. We find no abuse of discretion, in that the trial court's decision was within the "zone of reasonable disagreement." Point six is overruled.

### Conclusion

The judgment of the trial court is affirmed.

---

7. The "relevant to sentencing" language was added in 1989, and the "circumstances of the offense" language was added in 1993. Both amendments apply in the instant case, which was tried in March, 1994. Act of May 28, 1989, 71st Leg., R.S., ch. 785, § 4.04, 1989 Tex. Gen. Laws 3471, 3492; Act of May 8, 1993, 73rd Leg., R.S., ch. 900, § 5.05, 1993 Tex. Gen. Laws 3589, 3762 (amending article 37.07 § 3(a)).