

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-24-00247-CR
_____

BRITTANY ANN ROULEAU, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 89th District Court
Wichita County, Texas
Trial Court No. DC89-CR2020-1377

---

Before Womack, Wallach, and Walker, JJ.
Memorandum Opinion by Justice Walker

## MEMORANDUM OPINION

## I. INTRODUCTION

In the indictment, the State alleged that Appellant Brittany Ann Rouleau had intentionally or knowingly caused the sexual organ of Aaron,[1] a child who was then younger than fourteen years old and not Rouleau's spouse, to contact and penetrate her sexual organ. A jury found Rouleau guilty of the offense of aggravated sexual assault of a child as alleged in the indictment, a first-degree felony, and assessed her punishment at sixty years' imprisonment and a $10,000 fine. *See* Tex. Penal Code Ann. §§ 12.32 ("First[-]Degree Felony Punishment"), 22.021(a)(1)(B)(iii), (a)(2)(B), (e) ("Aggravated Sexual Assault"). The trial court sentenced Rouleau in accordance with the jury verdict and waived $465 in court costs. The judgment correctly reflects the term of imprisonment and the fine but incorrectly reflects $465 in court costs.

On appeal, in two issues, Rouleau argues that (1) during the trial on guilt or innocence, the trial court abused its discretion when it ruled that her recorded interview with the investigating detective constituted inadmissible hearsay and excluded it from evidence over her objection that she was entitled to its admission under the rule of optional completeness; and (2) during the trial on punishment, the trial court abused its discretion by admitting into evidence photos of a dead body

---

[1]We use a pseudonym to protect the child's identity. *See McClendon v. State*, 643 S.W.2d 936, 936 n.1 (Tex. Crim. App. [Panel Op.] 1982).

pertaining to an extraneous offense over her Rule 403 objection.[2] We hold that the trial court did not abuse its discretion by refusing to admit Rouleau's recorded interview during the trial on guilt or innocence or by admitting the photographs during the trial on punishment, and we overrule both of Rouleau's issues. But because the judgment incorrectly reflects court costs, we modify the judgment to reflect that the trial court waived court costs. We affirm the judgment as modified.

## II. BACKGROUND

Rouleau does not contest the sufficiency of the evidence. Accordingly, we will shorten the evidentiary discussion.

At trial, the evidence showed that in 2020, Rouleau confided to her neighbor Brandy Winfrey that she had had sexual relations with Aaron, who, at the time, was fourteen years old. Winfrey reported the sexual abuse to Child Protective Services, which conducted an investigation during which Aaron made an outcry to the CPS investigator. In turn, CPS reported the sexual abuse to the police. The police department assigned Detective Robert Welch to the case, and he arranged to have Aaron forensically interviewed at Patsy's House, a child advocacy center. Detective Welch observed the interview and learned that the last sexual assault occurred about

---

[2]In her brief, Rouleau presents her punishment issue first. We reverse the order of her issues because Rouleau's issue arguing error during the trial on guilt or innocence, if sustained, would moot her issue asserting error during the trial on punishment.

3

two years earlier and thus that Aaron was under fourteen years old when the offense occurred. Detective Welch then personally interviewed Winfrey and Rouleau.

During the trial on guilt or innocence, Rouleau sought—without success—to have the recording of her interview with Detective Welch admitted into evidence. During the interview, which was admitted for record purposes, Rouleau initially denied any sexual contact between her and Aaron, but she later asserted that Aaron had sexually assaulted her.

And during the punishment trial, the trial court admitted photographs of a man that Rouleau had allegedly stabbed and killed over Rouleau's objections. Rouleau asserted that the photographs were more prejudicial than probative.

## III. DISCUSSION

### A. EXCLUSION OF RECORDED INTERVIEW DURING TRIAL ON GUILT OR INNOCENCE

In one of Rouleau's two issues, she asserts that during the trial on guilt or innocence, the trial court abused its discretion when it ruled that her recorded interview with the investigating detective constituted inadmissible hearsay and excluded it from evidence over her objection that she was entitled to its admission under the rule of optional completeness. As shown below, Rouleau's reliance on the rule of optional completeness is misplaced.

4

## 1. Standard of Review

We review a trial court's ruling whether to admit or exclude evidence for an abuse of discretion. *Hart v. State*, 688 S.W.3d 883, 891 (Tex. Crim. App. 2024). Appellate courts will not reverse the trial court's ruling except where there has been a clear abuse of discretion falling outside the zone of reasonable disagreement. *Id.*

## 2. Legal Principles

Hearsay statements are generally inadmissible unless the statements fall within a recognized exception. *Walters v. State*, 247 S.W.3d 204, 217 (Tex. Crim. App. 2007). One such exception is found in Texas Rules of Evidence Rule 107, the rule of optional completeness. *Id.* Rule 107 permits the introduction of otherwise inadmissible evidence when that evidence is necessary to fully and fairly explain a matter "opened up" by the adverse party. *Id.* at 218; *Jones v. State*, 963 S.W.2d 177, 182 (Tex. App.—Fort Worth 1998, pet. ref'd) (per curiam). The rule is designed to reduce the possibility of the jury receiving a false impression from hearing only a part of some act, conversation, or writing. *Walters*, 247 S.W.3d at 218. Rule 107 does not permit introducing other similar, but inadmissible, evidence unless doing so is necessary to explain properly admitted evidence. *Id.* Further, merely referring to a document, statement, or act does not invoke the rule. *Id.*

Self-serving statements by the defendant, when the defendant does not take the stand, are inadmissible where they merely contradict some act or declaration first proffered by the prosecution. *Jones*, 963 S.W.2d at 182. Some exceptions, however,

5

exist, such as: (1) when the statement is considered res gestae of the offense or arrest; (2) when the State has previously proven part of a statement; or (3) when the statement is necessary to explain or contradict acts or declarations first offered by the State. *Id.*

### 3. Procedural Background

Here, Rouleau sought to have her recorded interview admitted through Detective Welch. Rouleau made one attempt to have Detective Welch repeat the statements that she had made during the interview and then three different attempts to have the recorded interview itself admitted.

On direct examination by the State, Detective Welch admitted that he interviewed Rouleau. The State did not, however, ask him any questions about the interview.

On cross-examination, defense counsel tried to ask Detective Welch questions about what Rouleau had said during her interview, but the State objected based on hearsay. Rouleau argued that her statements to him were admissible on several theories, but she did not raise the rule of optional completeness. The trial court sustained the State's objection. This was Rouleau's attempt to have Detective Welch testify about the statements that she had made during the interview.

Later, when Detective Welch admitted that his interview with Rouleau was recorded, defense counsel sought to have the recorded interview admitted, but the

State again objected based on hearsay. The judge again sustained the State's objection. This was Rouleau's first attempt to have the recorded interview admitted.

The next day, when the State recalled Detective Welch, before he testified, Rouleau again sought to have her recorded interview admitted; this time she argued (among other things) that the rule of optional completeness applied, but the court rejected her arguments. For record purposes only, however, the court admitted the recording. This was Rouleau's second attempt to have her recorded interview admitted for all purposes.

Once Detective Welch testified, defense counsel asked him whether Rouleau denied how the sexual act had occurred, and Detective Welch responded, "Well, she denied everything to begin with." Based on this response, defense counsel sought to have the recorded interview admitted because "the videotape . . . show[ed] she did not deny" sexual contact and because Rouleau "admitted that the act occurred[] but not how he said it occurred." Defense counsel continued: "I have a right to impeach the witness if he makes a false statement in front of the [j]ury and correct him." Although defense counsel did not expressly argue the rule of optional completeness, given her objections before Detective Welch testified, the gist of her objection arguably encompassed that basis. *See* Tex. R. App. P. 33.1(a)(1)(A) ("[T]he complaint [must be] made to the trial court by a timely . . . objection . . . that . . . stated the grounds for the ruling . . . unless the specific grounds were apparent from the context . . . .").

## 4. Application

Assuming, without deciding, that Rouleau preserved her complaint, her rule-of-optional-completeness argument fails because the State did not open the door. The State did not ask Detective Welch any questions regarding what Rouleau said during her interview. The rule of optional completeness is predicated on the adverse party opening the door by presenting only part of some act, conversation, or writing and, in the process, possibly misleading the jury. *See Walters*, 247 S.W.3d at 218. Rouleau—who did not testify—was attempting to admit her out-of-court self-serving statements without successfully fitting them within one of the exceptions. *See Jones*, 963 S.W.2d at 182. We hold that the trial court did not abuse its discretion by refusing to admit her recorded interview for all purposes and overrule Rouleau's issue.

## B. ADMISSION OF PHOTOGRAPHS DURING PUNISHMENT TRIAL

In Rouleau's other issue, she argues that during the punishment trial, the trial court abused its discretion by admitting into evidence photographs of a dead body pertaining to an extraneous offense over her Rule 403 objection, that is, that the photographs' probative value was substantially outweighed by the danger of unfair prejudice. The record shows that although the photographs were prejudicial, they were not unfairly prejudicial.

## 1. Standard of Review

We review a trial court's ruling admitting evidence over a Rule 403 objection for an abuse of discretion. *Perez v. State*, 562 S.W.3d 676, 689 (Tex. App.—Fort

Worth 2018, pet. ref'd). Provided the trial court's ruling falls within the zone of reasonable disagreement, no abuse of discretion occurs. *De La Paz v. State*, 279 S.W.3d 336, 343–44 (Tex. Crim. App. 2009).

## 2. Legal Principles

At a punishment trial, evidence may be offered as to any matter the trial court "deems relevant to sentencing." Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1). Determining what is relevant is a question of what helps the jury determine "the appropriate sentence for a particular defendant in a particular case." *Rogers v. State*, 991 S.W.2d 263, 265 (Tex. Crim. App. 1999). Even relevant evidence, however, may be excluded if the trial court determines that "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." Tex. R. Evid. 403.

When analyzing a Rule 403 objection, the trial court must engage in a balancing process. *Upchurch v. State*, 656 S.W.3d 170, 178 (Tex. App.—Fort Worth 2022, no pet.) The court must consider (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence and balance those factors against (3) any tendency of the evidence to suggest a decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency that a jury that has not been equipped to evaluate the probative force of the evidence would give it undue weight, and (6) the likelihood that

9

presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Id.*; *see Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006); *Newhouse v. State*, No. 02-23-00265-CR, 2024 WL 3819307, at *3 (Tex. App.—Fort Worth Aug. 15, 2024, pet. ref'd) (mem. op., not designated for publication).

In the context of admitting photographs of a body, courts should consider the number and size of the photographs, whether they are in color or black and white and the detail shown, whether they are gruesome, whether the body is naked or clothed, and whether the body has been altered since the crime in some way that might enhance the gruesomeness of the photograph to the appellant's detriment. *Shuffield v. State*, 189 S.W.3d 782, 787 (Tex. Crim. App. 2006).

### 3. Procedural Background

Corporal Dustin Lowery of the Clay County Constable's Office[3] responded in March 2023 to a call to a residence about "a male subject who was having chest pains." When he arrived, he saw Rouleau on the porch and EMTs trying to help a deceased male lying in a pool of blood with a stab wound on the upper left side of his chest. Corporal Lowery had the EMTs leave the home, taped off the area as a crime scene, and took photographs.

---

[3]Rouleau's aggravated-sexual-assault-of-a-child case was tried in Wichita County. Corporal Lowery testified about events in Clay County.

The State then sought to admit State's Exhibits 9 through 17—nine photographs that Corporal Lowery had taken at the scene. Rouleau objected that the photographs were "more prejudicial than probative" and were "inflammatory." The trial court overruled the objection, admitted the photographs, and allowed the State to publish them to the jury. When the State proceeded to have Corporal Lowery discuss the photographs, the trial court gave Rouleau a running objection.

Corporal Lowery then discussed State's Exhibits 9 and 10, which were full-body photographs of the deceased with jeans and tennis shoes on and with his shirt on but pulled back to expose his chest and stomach. State's Exhibits 11 and 12 were close-up photographs of the deceased's chest with a stab wound, blood, and adhesive pads that the EMTs had placed on his body. State's Exhibit 17 was a photograph of the bedroom, a bloodied mattress, and on the floor next to the bed, the deceased's arm.

Corporal Lowery also photographed other items at the scene. State's Exhibit 15 was a photograph of a lighter and a smoking apparatus, which Corporal Lowery described as "known to be [drug] paraphernalia." The smoking device was shaped like a hand grenade with tubing sticking out of it. State's Exhibit 16 was a photograph of a small clear plastic baggy on the bed that Corporal Lowery asserted "appeared to be paraphernalia." Corporal Lowery did not discuss State's Exhibits 13 and 14.

Corporal Lowery stated that other than the EMTs, Rouleau was the only other person at the scene. He described Rouleau as having blood on her right foot and on

her hands that was possibly consistent with a struggle. State's Exhibits 13 and 14 show feet and a hand with faint bloodstains; contextually, they were Rouleau's. Corporal Lowery thought that Rouleau had a scratch on her left arm and redness around her neck that possibly suggested that someone had tried to choke her. He did not know if Rouleau had been indicted for murder.

A second witness, Logan Hinkle, an EMT who had responded to the call, testified that he was assigned to care for Rouleau, who "was covered in blood" on "her legs, her feet[,] and her hands." When asked if he noted any signs of an altercation, Hinkle responded, "There [were] two little scratches on her chest." Hinkle denied seeing any redness on Rouleau's neck.

Hinkle stated that after the deceased male was loaded into the ambulance, Rouleau—asserting that she was pregnant and wanted to see a doctor—asked for and was granted permission to ride in the ambulance with the EMTs. While in the ambulance, Rouleau said, "I'm so scared. I can't say anymore. I don't want to get in trouble. . . . I went in for a hug[,] and he . . . started . . . swearing at me and calling me a whore, then started swinging his fists at me while he was on the phone." She also said, "I'm just so scared right now. This isn't good."

### 4. Application

Here, nine photographs were admitted, only four of which depicted the deceased. Regarding their size, Rouleau asserts that the photographs were large because they fill a full page in the record. The State maintains that the photographs

12

"were not excessively large" and describes them as having been admitted on single sheets of paper. All the photographs are in color. The four photographs of the deceased show primarily his exposed chest, a stab wound, blood, and adhesive pads that the EMTs had placed on him. None of these considerations suggest that the photographs potentially impressed the jury in some irrational but nevertheless indelible way. *See Shuffield*, 189 S.W.3d at 787.

The photographs had inherent probative force, and the State needed the photographs. Testimony and photographs that Rouleau had stabbed someone to death were both prejudicial, and the photographs of the stabbing might have carried more weight than the testimony, but that is not to say that the photographs were unfairly prejudicial. All evidence will be prejudicial to one party or the other. *Joiner v. State*, 825 S.W.2d 701, 708 (Tex. Crim. App. 1992). The central point of offering evidence is to injure the opponent's case. *Rogers*, 991 S.W.2d at 266. Only when there is a clear disparity between the prejudice and probative value of the evidence does Rule 403 come into play. *Joiner*, 825 S.W.2d at 708. Unfair prejudice refers to an undue tendency to suggest deciding an issue on an improper basis, commonly, though not necessarily, an emotional one. *Rogers*, 991 S.W.2d at 266.

Rouleau argues that the photographs had no probative value in the context of a sexual-assault prosecution. Had the photographs been admitted during the trial on guilt or innocence, we might agree. But for purposes of punishment, the trial court could have deemed relevant to sentencing the fact that Rouleau—while awaiting trial

13

on the present offense—had stabbed a man to death and that the man she killed possessed drug paraphernalia.[4] Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1). Accordingly, because the photographs were limited to the punishment trial, they did not have a tendency to confuse or distract the jury from the main issues. *See Upchurch*, 656 S.W.3d at 178.

For admissibility under Section 3(a)(1) of Article 37.07, whether the stabbing was murder or in self-defense made no difference. *See Jabben v. State*, No. 02-23-00210-CR, 2024 WL 3897994, at *9–10 (Tex. App.—Fort Worth Aug. 22, 2024, pet. ref'd) (mem. op., not designated for publication). Whether the stabbing was murder or in self-defense made a difference in how the jury used the information, and the jury had evidence before it that the stabbing might have been in self-defense. The jury thus had been equipped to evaluate the probative force of the evidence. *See Upchurch*, 656 S.W.3d at 178.

The evidence did not have a tendency to suggest deciding punishment on an improper basis. *See id.* "Generally, a photograph is admissible if verbal testimony as to matters depicted in the photograph is also admissible." *Gallo v. State*, 239 S.W.3d

---

[4]The record shows that Rouleau was arrested in October 2020 and indicted in December 2020. In January 2021, the trial court ordered a competency examination. And in November 2022, the trial court ordered a second competency examination and an examination for purposes of the insanity defense. In April 2023—after the stabbing incident—the trial court held Rouleau's bond insufficient and reset it at $600,000. When sentenced in May 2024, Rouleau was given 482 days credit for time spent in jail.

757, 762 (Tex. Crim. App. 2007). "A trial court does not err merely because it admits into evidence photographs which are gruesome." *Sonnier v. State*, 913 S.W.2d 511, 519 (Tex. Crim. App. 1995). The power of the photographs stem from nothing more than the effects of Rouleau's conduct. *See Edwards v. State*, 691 S.W.3d 703, 727 (Tex. App.—Houston [14th Dist.] 2024, no pet.).

The evidence did not consume an inordinate amount of time. *See Upchurch*, 656 S.W.3d at 178. Corporal Lowery's testimony consisted of eighteen pages. Hinkle's testimony consisted of nine pages. In short, the State did not seek to try Rouleau for murder during the punishment phase of her aggravated-sexual-assault-of-a-child case. The State did little more than alert the jury during the punishment trial that Rouleau had stabbed a man to death and that the stabbing may have been in self-defense.

Nor did the photographs merely repeat evidence that had already been admitted. *See id.* Photographs can communicate information that testimony cannot. *See Gonzalez v. State*, No. 03-22-00287-CR, 2023 WL 7093815, at *12 (Tex. App.— Austin Oct. 27, 2023, no pet.) (mem. op., not designated for publication) ("The State responded that . . . the jury's hearing testimony concerning the injuries would be less effective than its seeing them . . . ."); *id.* at *13 ("Although [the doctor who treated the victim] testified to the photographs' contents and to [the victim's] injuries more generally, his testimony did not render the photographs redundant."); *see also Sonnier*, 913 S.W.2d at 519 ("[W]hen the power of the visible evidence emanates from nothing

15

more than what the defendant has himself done[,] we cannot hold that the trial court has abused its discretion merely because it admitted the evidence.").

We hold that the trial court did not abuse its discretion by admitting the complained-of photographs and overrule Rouleau's issue.

## IV.  CLERICAL ERROR

We have noted a clerical error in the judgment.  When we have the necessary information to do so, we can modify the trial court's judgment to make the record speak the truth.  *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); *Mayo v. State*, 690 S.W.3d 103, 109 (Tex. App.—Amarillo 2024, pet. ref'd) (op. on reh'g); *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd), *modified on other grounds*, *Lockett v. State*, 874 S.W.2d 810, 818 (Tex. App.—Dallas 1994, pet. ref'd) (citing *Bigley*, 865 S.W.2d at 27–28, for proposition that ability to modify judgment not limited to clerical errors).  This power does not turn on whether a party has objected in the trial court or requested the relief on appeal.  *Mayo*, 690 S.W.3d at 109; *Asberry*, 813 S.W.2d at 529–30.

Here, when sentencing Rouleau, the trial court waived the $465 in court costs.  The judgment incorrectly reflects these specific costs.[5]  Because the judgment

---

[5]A portion of the judgment is reserved to show that the defendant's fines and costs have been credited for time served.  Accordingly, even though a judgment may reflect court costs, the judgment may also reflect that the defendant is not responsible for paying them because the court has credited the amount for time served in jail.  But in this instance, in the location reserved for crediting court costs for time served, the notation "N/A" appears.

16

incorrectly reflects court costs, we modify the judgment to show that the trial court waived those costs. We affirm the judgment as modified.

## V. CONCLUSION

We overrule both of Rouleau's issues. We correct clerical error in the judgment to reflect that the trial court waived court costs. We affirm the trial court's judgment as modified.

/s/ Brian Walker

Brian Walker
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: April 24, 2025