Opinion issued on March 11, 2004.








     





In The
Court of Appeals
For The
First District of Texas




NO. 01-02-00909-CR




DAEQUINJAMIN LAVOR WILLIAMS, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 183rd District Court
Harris County, Texas
Trial Court Cause No. 874733




MEMORANDUM OPINION
          A jury convicted appellant, Daequinjamin Lavor Williams, of murder and
assessed punishment at 45 years’ confinement. In three points of error, appellant
contends that the trial court erred by (1) allowing the investigating homicide officer
to give his direct opinion that the State’s two witnesses implicating appellant as the
killer were telling the truth, (2) allowing hearsay statements implicating appellant as
the murderer, and (3) refusing to submit appellant’s requested jury charge on sudden
passion. We affirm.
Background
          Ina Egenriether, Robert “Bobby” Brown’s girlfriend, testified that, while she
and Brown were having drinks, on the evening of April 7, 2001, Brown made a phone
call to arrange a meeting to buy some crack cocaine. Brown and Egenriether drove
in Brown’s truck to get the crack cocaine at a Citgo station near Aldine Bender and
highway 59. Egenriether had seen Brown purchase drugs from appellant at this
location on other occasions. When she and Brown arrived, Egenriether saw
appellant, who she knew as “Booger” or “Bubba,” deliver a couple of rocks of crack
cocaine to Brown in return for a $50 bill. Appellant then demanded that Brown
return the cocaine because the $50 bill was not real, and appellant threatened to shoot
Brown. Brown told appellant that the money was real and started to drive away. 
After appellant pursued him, Brown stopped his truck, got out of the truck, and
returned the drugs to appellant. Appellant then left, taking both the drugs and
Brown’s money. Brown cursed and was upset because appellant took his money. 
Brown got in his truck, pursued appellant, and ultimately rammed into the back of the
car in which appellant was a passenger. Appellant then partially climbed out of the
passenger door’s window and aimed a gun toward Egenriether who rode in Brown’s
passenger seat. She ducked and heard a gunshot. When Egenriether looked up, she
saw that Brown had a bullet wound in his head. Egenriether got out of the truck and
sought help.
          After the shooting, Egenriether was taken to the police station where she gave
an initial statement indicating that she did not know the shooter. After returning to
Brown’s house where she also lived, she called her friend, Danny Roberts, to pick her
up because she was afraid that appellant would try to shoot or kill her. Roberts
testified, over appellant’s hearsay objections, that Egenriether told him the following
about the incident: Brown called “Booger” for some dope; when they got the dope,
appellant said the money was not real; appellant grabbed the money and dope and
took off; Brown ran into appellant with his truck at a high rate of speed; appellant
reached out the window and shot three times at the windshield of Brown’s car;
Egenriether jumped down on the floorboard; Egenriether got scared and took off
running across the freeway trying to wave someone down; “Booger” did it; and
Egenriether was scared that he would come after her because she was the only witness
to the murder. Roberts testified that, when Egenriether told him what had occurred,
it was “a few hours” after the shooting and she appeared upset, afraid, and was crying. 
He encouraged her to call the police, but she initially did not want to call them
“because she was shook up. She didn’t know what to do.” 
          Approximately eight days later, Egenriether contacted the police. Houston
Police Department Officer Richard Martinez, along with another investigator, came
to Roberts’s house where Egenriether was staying. Roberts told them what
Egenriether told him about the incident and stated that he knew who “Booger” was. 
Both Egenriether and Roberts identified appellant in a photospread. Egenriether gave
the investigators a revised statement, identifying appellant as the individual who shot
and killed Brown. She testified that she initially was afraid to tell police that
appellant shot Brown because drugs were involved and she thought that appellant
might try to kill her. 
          Officer Martinez, who spoke with her at the scene and then at the police
station, testified that Egenriether was “really frantic,” “shaken,” “scared,” and “had
blood all over her.” Martinez believed that she gave incomplete statements of what
occurred due to her being fearful and confused. He testified that people who
experience traumatic episodes sometimes forget things and that it was common to
have witnesses to a murder unwilling to get involved for fear of retaliation or getting
in trouble. He thought that there were gaps in Egenriether’s initial statement and that
something was missing or that she was not being completely honest. 
          Officer Martinez testified, without objection, as to subsequent statements made
by Egenriether in her second statement. His testimony, reciting what Egenriether told
him regarding the shooting, corroborated Egenriether’s trial testimony. Egenriether
told Martinez that she knew a guy by the name of “Booger” who “sells crack cocaine”
and that Brown set up a $50 dope deal with “Booger” at highway 59 and Aldine
Bender. Her discussion with Martinez was transcribed, and Martinez testified that
the investigators then obtained an arrest warrant for appellant based on Egenriether’s
identification of appellant as the man who shot and killed Brown. 
          Appellant testified on his own behalf at the guilt-innocence phase of trial. He
admitted having a part-time job selling drugs, including crack cocaine and admitted
selling drugs to Brown several times before the shooting. He denied being present
at the time of the offense, testified that he was celebrating his birthday, and relied on
an alibi defense. He testified that he did not shoot or kill Brown, that he was not
claiming self defense, and stated, “I wasn’t even there.”
Opinion Rebuttal Testimony
          In his first point of error, appellant contends that “the trial court erred in
allowing the investigating homicide officer to give his direct opinion that the State’s
two witnesses implicating appellant as the killer were telling the truth.”
          A trial court’s decision to admit evidence is reviewed for an abuse of
discretion. Goff v. State, 931 S.W.2d 537, 553 (Tex. Crim. App. 1996); Pierre v.
State, 2 S.W.3d 439, 442 (Tex. App.—Houston [1st Dist.] 1999, pet. ref’d). A trial
court’s ruling must be upheld if reasonably supported by the record and correct on
any theory of law applicable to the case. Willover v. State, 70 S.W.3d 841, 845 (Tex.
Crim. App. 2002). 
          It is generally improper for a witness to offer a direct opinion as to the
truthfulness of another witness. See Schutz v. State, 957 S.W.2d 52, 59 (Tex. Crim.
App. 1997). This type of testimony is inadmissible because it does more than “assist
the trier of fact to understand the evidence or to determine a fact in issue”; it decides
an issue for the jury. Yount v. State, 872 S.W.2d 706, 709 (Tex. Crim. App. 1993). 
          One exception to this rule is found in the rule of optional completeness, which
grants the opposing side a right to reply and correct a false impression left with the
jury. Goldberg v. State, 95 S.W.3d 345, 375, 386 (Tex. App.—Houston [1st Dist.]
2002, pet. ref’d). This rule guards against “the possibility of confusion, distortion or
false impression that could rise from the use of a portion of an act, writing,
conversation, declaration or transaction out of proper context.” Livingston v. State,
739 S.W.2d 311, 331 (Tex. Crim. App. 1987). “However, a party may not stray
beyond the scope of the invitation.” Schutz, 957 S.W.2d at 71.
          Appellant argues that, by allowing Officer Martinez to answer questions
regarding the veracity of Egenriether and Roberts, Martinez supplanted the jury’s role
as “lie detector” and “crossed the line” by injecting his personal and expert opinion.
We disagree.
          On cross-examination, defense counsel impeached Egenriether through
extensive questioning showing prior inconsistent statements between her initial and
subsequent statements to the police and her trial testimony and by showing that she
was on deferred adjudication community supervision for possession of crack cocaine. 
Defense counsel also impeached Roberts by showing that he had many prior felony
convictions. 
          Further, on cross-examination, defense counsel asked Officer Martinez a series
of questions regarding the credibility of Egenriether and Roberts. Defense counsel
asked about Martinez’s earlier testimony stating that he did not have a good feeling
about Egenriether’s story and he felt she was leaving things out, lying to him, and not
being fully truthful. Defense counsel asked Martinez if he recalled Egenriether
stating that she had drunk several whiskeys and beers and further asked Martinez if
he agreed that intoxication can affect the manner in which people perceive things. 
Martinez was asked to confirm that Egenriether was a “crack addict” and that Roberts
had at least one felony conviction. Defense counsel then asked, “still it doesn’t
change the fact that people who run in those kind of circles and been to the
penitentiary all the time are not credible, generally; isn’t that correct?” Martinez
replied, “I would agree.” Defense counsel later asked, “So there was some degree of
pressure applied for [Egenriether] to change her story; isn’t that correct?” and
Martinez replied, “Well, for her to tell us the truth.” Defense counsel then asked,
“Right. And quit lying to you, right?” and Martinez replied, “Right.” Defense
counsel asked about Egenriether’s second statement and how it was substantially
different from her initial statement in several respects, including her admission to
drug use in the second statement “when she had lied about it in the first statement.”
          On re-direct, the State asked:
Q.Officer Martinez, just a couple of quick questions. You said
before the break that persons who have felony convictions are not
credible. Do you remember saying that earlier in your testimony?
 
A.Yes.
 
Q.Did you believe, based upon your investigation and your
interviews and your assessment of this case, that [Egenriether] is
credible?
 
Defense Counsel: Excuse me, Judge, that invades the province of the
jury. It’s an improper question to get a personal
opinion on veracity like that.
 
The Court:That’s overruled.
 
A.Yes. Yes. I felt she was.
 
Q.Do you believe that she was telling the truth when she said that
this man shot Bobby Brown?
 
Defense Counsel: Same precise objection, Your Honor.
 
The Court:Yes, sir. Overruled. 
 
A.Yes. 
 
Q.Did you believe that Danny Roberts was credible?
 
Defense Counsel: Same objection, Your Honor, invades the province
of the jury to ask for a personal opinion of the
officer on the veracity of a witness. 
 
The Court:Yes, sir. Overruled.
 
Defense Counsel: Bolstering of the witness, Your Honor, also.
 
The Court:Yes, sir. Overruled.
 
Q.And what was your answer, sir?
 
A.Yes.

          By impeaching the State’s witnesses and cross-examining Martinez regarding
the credibility, or lack thereof, of Egenriether and Roberts, defense counsel invited
the State to respond on re-direct. The complained-of evidence was admissible, not
to show that Egenriether and Roberts were telling the truth or to bolster their
testimony, but to correct a false impression left with the jury that Martinez doubted
the credibility of Egenriether and Roberts. Cf. Arzaga v. State, 86. S.W.3d 767, 776
(Tex. App.—El Paso 2002, no pet.) (“Because [the officer’s] testimony has no
purpose other than to show that the State’s witnesses were telling the truth, the trial
court erred in admitting it.”).
          We overrule appellant’s first point of error.
Hearsay
          In his second point of error, appellant contends that “the trial court erred in
allowing Danny Roberts to testify about Egenriether’s hearsay statements implicating
appellant as the murderer.”
          A trial court has broad discretion in determining whether evidence is
admissible as an exception to the hearsay exclusionary rule. See Zuliani v. State, 97
S.W.3d 589, 595 (Tex. Crim. App. 2003); Kubin v. State, 868 S.W.2d 394, 396 (Tex.
App.—Houston [1st Dist.] 1993, pet. ref’d).
          Appellant argues that Egenriether’s statements to Roberts could not be
admissible under the excited utterance exception to hearsay because they fell short
of the “emotional threshold” requirement, were not spontaneous, and did not result
from impulse.
          Appellant was trying to prevent Roberts from testifying regarding what
Egenriether told him concerning the night of the shooting. Appellant objected to
hearsay when the State asked Roberts, “What did [Egenriether] tell you that she was
so upset about?” The trial court overruled the objection, and Roberts responded, “She
wanted me to come get her because she was afraid Booger was going to come shoot
her, too.” However, the following testimony was admitted without a hearsay
objection: 
Q.Okay. What did she tell you happen[ed] after they hit him with
the car?”
 
A. [Egenriether] said that Booger reached out the window and shot
three times at the windshield.
 
Q.Okay. And did they tell you what happened next, after he shot at
the windshield?
 
          A.      She jumped down on the floorboard.

Although he complains about Roberts’s testimony, appellant failed to object when the
same evidence was presented again. Further, Egenriether’s and Martinez’s testimony,
offering the same evidence, was admitted without an objection at trial. When similar
evidence is admitted without objection, overruling an objection to evidence will not
result in reversal. See Leday v. State, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998).
Any error in the admission of hearsay testimony is harmless in light of other
unobjected-to evidence proving the same fact. Brooks v. State, 990 S.W.2d 278, 287
(Tex. Crim. App. 1999). 
          We overrule appellant’s second point of error.
Sudden Passion
          In his third point of error, appellant argues that the trial court erred, in the
punishment phase of trial, by refusing to instruct the jury on whether appellant caused
Brown’s death under the immediate influence of sudden passion. 
          An accused is entitled to an instruction on every defensive issue raised by the
evidence whether that evidence is strong, weak, contradicted, unimpeached, or
unbelievable. Muniz v. State, 851 S.W.2d 238, 254 (Tex. Crim. App. 1993); 
Benavides v. State, 992 S.W.2d 511, 526 (Tex. App.—Houston [1st Dist.] 1999, pet.
ref’d). We must, therefore, consider all of the evidence raised at trial, regardless of
the strength of the evidence or whether it is controverted. Reese v. State, 877 S.W.2d
328, 333 (Tex. Crim. App. 1994).
          Consequently, if the record reveals any evidence that appellant acted under the
immediate influence of sudden passion arising from an adequate cause, the trial court
should instruct the jury on this mitigating issue. Trevino v. State, 100 S.W.3d 232,
237 (Tex. Crim. App. 2003). The evidence may not, however, be so weak, contested,
or incredible that it could not support such a finding by a rational jury. See Moore
v. State,  969 S.W.2d 4, 11 (Tex. Crim. App. 1998); Benavides, 992 S.W.2d at 526.
“The mere fact that a defendant acts in response to the provocation of another is not
sufficient to warrant a charge on sudden passion. Instead, there must be some
evidence that the defendant was under the immediate influence of sudden passion.” 
Trevino, 100 S.W.3d at 241.
          We review evidence offered in support of a defensive issue in the light most
favorable to the defense. Benavides, 992 S.W.2d at 525. The trial court must submit
an instruction on sudden passion if there is some evidence of: (1) a legally adequate
cause that would produce anger, rage, resentment, or terror sufficient to render an
ordinary person incapable of cool reflection and (2) the accused’s excited and agitated
state of mind arising out of provocation by the victim or someone acting with the
victim at the time of the killing. Id. at 526. In considering whether any evidence is
raised on this punishment issue, we review the record from both the guilt-innocence
and punishment phases of the trial. Trevino, 100 S.W.3d at 238. 
          During the punishment phase, a defendant may raise the issue as to whether he
caused the death of an individual under the immediate influence of sudden passion
arising from adequate cause. Tex. Pen. Code Ann. § 19.02(d) (Vernon Supp. 2004). 
If the defendant can prove the issue of sudden passion by a preponderance of the
evidence, the offense is a felony of the second degree rather than of the first degree.
Id. “Sudden passion” is defined as “passion directly caused by and arising out of
provocation by the individual killed or another acting with the person killed which
passion arises at the time of the offense and is not solely the result of former
provocation.” Tex. Pen. Code Ann. § 19.02(a)(2) (Vernon Supp. 2004). “Adequate
cause” is defined as “cause that would commonly produce a degree of anger, rage,
resentment, or terror in a person of ordinary temper, sufficient to render the mind
incapable of cool reflection.” Tex. Pen. Code Ann. § 19.02(a)(1) (Vernon Supp.
2004).
          During the punishment phase of trial, appellant requested a jury charge on the
issue of sudden passion. The trial court denied the request, noting that there was “just
absolutely no evidence of [sic] specifically showing that . . . the defendant was acting
under sudden passion. There is absolutely no evidence presented in the record as to
his frame of mind at the time of the shooting. And certainly no evidence that would
show that he was suffering from sudden passion arising from an adequate cause.” We
agree.
          Appellant did not testify at the punishment phase of trial and did not offer any
direct evidence addressing the issue of sudden passion arising from adequate cause. 
In the guilt phase of trial, appellant denied being present at the shooting. 
Nonetheless, appellant contends that the issue of sudden passion was raised because
Brown provoked appellant by ramming his truck “real hard” into appellant’s smaller
car. Appellant further directs us to Egenriether’s first statement to the police in which
she stated that the shooter “hollered” twice just before he shot Brown. Appellant
argues that, under Moore v. State, 969 S.W.2d 4 (Tex. Crim. App. 1998), both the
ramming of the car and appellant’s “angry” hollering at Brown are instances that
constitute sudden passion evidence. 
          Appellant’s reliance on Moore is misplaced. In Moore, after leaving a club,
two groups of men confronted each other in the parking lot, and the victim and the
defendant were involved in the “highly charged atmosphere.” 969 S.W.2d at 7, 11. 
The victim acted “hostile and intoxicated” and attempted to hit the defendant twice
with his car. Id. The defendant jumped out of the way to avoid being struck. Id.
Someone in the crowd threw appellant a rifle, and appellant then shot the victim. Id.
at 7–8. The trial court found that, based on the facts presented in this “highly charged
atmosphere,” a jury could have rationally found that such events would commonly
produce a degree of anger, rage, resentment, or terror in a person of ordinary temper,
sufficient to render the mind incapable of cool reflection, thus justifying the sudden
passion instruction. Id. at 11. Those facts are not present in this case.
          A sudden passion charge should be given if there is some evidence showing
that appellant’s mental state “rose beyond a bare claim of fear or was so strong and
overpowering that it rendered him incapable of rational thought and collected action.”
Jones v. State, 963 S.W.2d 177, 180 (Tex. App.—Fort Worth 1998, pet. ref’d); see
also Trevino, 100 S.W.3d at 238. Here, there was no evidence, in either phase of
trial, that would demonstrate that appellant’s mental state was such that he was
incapable of rational thought and collected action. Cf. Trevino, 100 S.W.3d at 239
(holding that some evidence of sudden passion consisted of the defendant “freaking
out,” “scared and panicked,” “crying and shaking,” “pacing,” “consistently upset and
crying,” “sounded distressed,” and “looked past” the investigator). 
          We hold that the trial court was not presented with any evidence that
appellant’s situation rendered him incapable of rational thought. See Jones, 963
S.W.2d at 180. Nor does the record support appellant’s claim that he was acting with
sudden passion arising at the time of the offense. See Trevino, 100 S.W.3d at 238. 
Thus, we hold that the trial court did not err in denying appellant’s request to instruct
the jury on the issue of sudden passion in the punishment phase of the trial. 
          We overrule appellant’s third point of error.

Conclusion
We affirm the judgment of the trial court.
 
George C. Hanks, Jr.
                                                             Justice
Panel consists of Justices Nuchia, Alcala, and Hanks.
Do not publish. Tex. R. App. P. 47.4.