NUMBER 13-03-218-CR

 

                         COURT OF APPEALS

 

                     THIRTEENTH
DISTRICT OF TEXAS

 

                         CORPUS
CHRISTI - EDINBURG  

 

FELIPE SAN MARTIN ADRIANO,                                         Appellant,

 

v.

 

THE STATE OF TEXAS,                                                                 Appellee.

 

On appeal from the 398th District
Court of Hidalgo County, Texas.

 

                                MEMORANDUM
OPINION

 

                          Before
Justices Yañez, Castillo, and Garza

                            Memorandum
Opinion by Justice Garza

 








A jury convicted appellant, Felipe San Martin
Adriano, of the murder of his five-month-old daughter, Felicity, and he was
sentenced to twenty-five years= imprisonment. 
See Tex. Pen. Code Ann. ' 19.02 (Vernon 2003).  Appellant now appeals his conviction, arguing
that (1) the evidence was legally and factually insufficient to convict him of
murder, (2) the trial court improperly allowed a witness to give his opinion as
to guilt, (3) the trial court erred in admitting autopsy photographs, and (4)
the trial court erred in admitting the testimony and report of the Child
Protective Services (AC.P.S.@) investigator. 
We affirm.

Factual Background

Appellant and his wife, Claudette, had two children,
Felipe Jr. and Felicity.  On June 5,
2002, five-month-old Felicity became comatose. 
Felicity was declared brain dead, the victim of shaken baby syndrome (ASBS@) and multiple blunt trauma to the head.  Felicity died on June 11, 2002, after life
support was disconnected.

Several physicians testified that the cause of death
was either by being shaken, or repeatedly struck by something, or struck
against something, each of which could have independently caused her
death.  

On the evening of June 5, 2002, appellant,
Claudette, Felipe Jr., Felicity, Claudette=s mother, sister, and 11-year-old brother, Angel,
were at appellant=s home. 
Claudette, her mother, her sister, and Felipe Jr. went to H-E-B, leaving
Felicity with appellant and Angel.  When
they returned from H-E-B, Felicity appeared to be doing fine.  Claudette=s
mother, sister and brother left shortly thereafter.  Later that evening, Claudette and Felipe Jr.
went to Dairy Queen, leaving Felicity alone with appellant.  Upon returning from Dairy Queen, appellant
and Claudette noticed that Felicity would not move.  They contacted 911 and Felicity was taken to
the hospital.  That same evening,
Felicity was declared brain dead.  Both
appellant and Claudette were indicted for Felicity=s death.

I. 
Sufficiency of Evidence 

In his first issue, appellant claims the evidence is
legally and factually insufficient to support a conviction for murder. 

 








Legal Sufficiency

 

Evidentiary sufficiency is measured against the
elements of the offense as defined by the hypothetically correct jury charge
for the case.  See Fuller v. State,
73 S.W.3d 250, 252 (Tex. Crim. App. 2002); see also Malik v. State,
953 S.W.2d 234, 240 (Tex. Crim. App. 1997). 
Such a charge would accurately set out the law, would be authorized by
the indictment, and would not unnecessarily increase the State=s burden of proof. 
Malik, 953 S.W.2d at 240. 








When reviewing the legal sufficiency of evidence, we
view the evidence in the light most favorable to the verdict to determine
whether any rational trier of fact could have found the essential elements of
the offense beyond a reasonable doubt.  Jackson
v. Virginia, 443 U.S. 307, 319 (1979); Sanders v. State, 119 S.W.3d
818, 820 (Tex. Crim. App. 2003).  The
standard is the same in both direct and circumstantial evidence cases.  Geesa v. State, 820 S.W.2d 154, 162
(Tex. Crim. App. 1991), overruled on other grounds, Paulson v. State, 28
S.W.3d 570 (Tex. Crim. App. 2000).  All
of the evidence is considered by the reviewing court, regardless of whether it
was properly admitted.  See Johnson v.
State, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993); see also Chambers v.
State, 805 S.W.2d 459, 460 (Tex. Crim. App. 1991) (en banc); Thomas v.
State, 753 S.W.2d 688, 695 (Tex. Crim. App. 1988) (en banc).  We are not fact finders; our role is that of
a due process safeguard, ensuring only the rationality of the trier of fact=s finding of the essential elements of the offense
beyond a reasonable doubt.  See Moreno
v. State, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988) (en banc).  In purely circumstantial cases such as this,
it is unnecessary for every fact to point directly and independently to
appellant=s guilt; it is enough if the conclusion is warranted
by the combined and cumulative force of all the incriminating
circumstances.  See Johnson, 871
S.W.2d at 186; Russell v. State, 665 S.W.2d 771, 776 (Tex. Crim. App.
1983) (en banc). 

To support a conviction for murder, the State had
the burden to prove that appellant (1) intentionally or knowingly caused the
death of the child, or (2) intended to cause serious bodily injury and
committed an act clearly dangerous to human life that caused the death of the
child.  Tex.
Pen. Code Ann. ' 19.02.  Here,
the State had to prove beyond a reasonable doubt that appellant intentionally
caused the death of his daughter or intentionally caused her serious bodily
injury while committing an act clearly dangerous to human life.  See id.   

Contrary to appellant=s
assertion, the evidence, even though circumstantial, is not insufficient merely
because there were other reasonable hypotheses for the injury.  Sonnier v. State, 913 S.W.2d 511, 516
(Tex. Crim. App. 1995); Geesa, 820 S.W.2d at 155‑61. 

In his brief, appellant does not dispute that
Felicity suffered from SBS.  Instead, he
argues that because the medical evidence did not pinpoint the exact time that
Felicity=s injuries occurred, the State did not prove that he
was the only person with access to Felicity who could have harmed her.  He also asserts that there is no evidence to
indicate he was ever alone with her on the night in question.  He contends that mere presence with the child,
standing alone, does not support the legal sufficiency to convict him.  Appellant points to Felicity=s lack of bruises, bleeding, or scratches as
evidence that she was not injured when she was with him on the evening of June
5, 2002.  He further claims that there
were no indications such as yelling or other sounds that would indicate he
harmed the child in any manner.        













The record reflects that on the evening of June 5,
2002, shortly before 10:00 p.m., upon returning from Dairy Queen, Claudette
noticed that Felicity was very ill. 
Felicity was transported to the hospital exhibiting signs of SBS.  Testimony from several doctors demonstrated
that Felicity had a swollen head, scratches, and recent red bruises on both
arms that were consistent with pressure from fingertips, in addition to fatal
internal injuries.  The testimony showed
that Felicity=s brain had suffered a traumatic event probably late
in the afternoon or late at night between June 5th and June 6th.[1]  Dr. Turlipati, the pediatric intensive care
doctor who treated Felicity, testified that symptoms of SBS include breathing
problems, seizures and posturing.  Dr.
Turlipati testified that based on the gravity of Felicity=s injuries, the symptoms would have appeared within
five to ten minutes after infliction, and that the brain swelling itself would
have occurred within minutes or seconds. 
There was testimony that Felicity exhibited multiple skull fractures,
blood along the skull and brain, massive brain swelling, and vitreous
hemorrhaging in both eyes, all of which are consistent with SBS or closed head
injury.  Dr. Turlipati explained that SBS
usually occurs when a caretaker becomes frustrated with a crying baby, picks
her up, usually by the chest or arms, and shakes her vigorously.  He elaborated that, because small babies do
not have full control of their head muscles, the baby=s head will flop back and forth Ain an intense jerking motion@ if shaken vigorously.  Turlipati further testified that Felicity may
have also been hit against the side of the crib or a wall, or thrown into the
crib with the right side of her head hitting something hard.  Turlipati testified that Felicity exhibited
two separate injuries, shaking and hitting. 
Either one, independent of each other, could have caused her death.             

The gist of appellant=s
argument is that the State was required to prove that he was responsible for
causing serious bodily injury to Felicity, but failed to do so because the
State did not prove that he was the only person with access to Felicity who
could have harmed her.[2]  








The evidence adduced at trial, viewed in the light
most favorable to the verdict, supports appellant=s
conviction.  The State produced testimony
from Claudette, Claudette=s mother, and Angel showing that Felicity looked and
acted fine when they returned from H-E-B.[3]  Claudette also testified that Felicity was
still doing fine when she went to Dairy Queen, but was very ill when she
returned.[4]  The evidence showed that Felicity was left
alone with appellant for about fifteen to twenty minutes while Claudette and
Felipe Jr. went to Dairy Queen.  Upon
returning from Dairy Queen, Claudette found Felicity to be unresponsive,
seizing and posturing.  Medical experts
concluded the cause of Felicity=s death was SBS and blunt force trauma to the
head.  Several medical experts testified
that based on the magnitude of her injuries, Felicity would have been
symptomatic within five to ten minutes of the injuries.  Appellant was the only person with Felicity
during the fifteen to twenty minute period before her symptoms were observed by
Claudette.  Appellant contends that he
was not alone with Felicity, but that Angel was also there, and could have just
as likely injured Felicity.  However, the
State presented testimony showing that while Angel did stay with appellant and
Felicity while Claudette and her mother went to H-E-B, upon returning from
H-E-B, Angel left with his mother. 
Appellant was then left alone with Felicity while Claudette and Felipe
Jr. went to Dairy Queen.  Medical
testimony showed that, given the gravity of Felicity=s injuries and the amount of time it would have
taken for the symptoms to appear after infliction, Felicity=s injuries were most likely inflicted while
Claudette and Felipe Jr. were at Dairy Queen. 
The jury is the exclusive judge of the credibility of  witnesses and of the weight to be given their
testimony.  See Barnes v. State,
876 S.W.2d 316, 321 (Tex. Crim. App. 1994) (en banc) (per curiam).  The jury was therefore free to reject any
implication that some other person could have caused Felicity=s injuries in light of all the evidence presented at
trial.  Zuniga v. State, 144
S.W.3d 477, 483 (Tex. Crim. App. 2004) (stating that the jury, not the
reviewing court, has the responsibility of accepting or rejecting alternative
theories of causation); Johnson, 871 S.W.2d at 186 (holding that, in a
circumstantial evidence case, Ait is not necessary that every fact point directly
and independently to the defendant=s guilt; it is enough if the conclusion is warranted
by the combined and cumulative force of all the incriminating circumstances@).       Accordingly, after examining the evidence
under the applicable legal sufficiency standard of review, we conclude that the
jury was rationally justified in finding appellant=s guilt beyond a reasonable doubt.  Appellant=s
challenge to the legal sufficiency of the evidence is overruled. 

 








Factual Sufficiency

In a factual sufficiency review, the evidence is
viewed in a neutral light, favoring neither party.  See Clewis v. State, 922 S.W.2d
126, 134 (Tex. Crim. App. 1996).  In this
neutral light, we determine whether Athe proof of guilt is so obviously weak as to
undermine confidence in the jury=s determination, or the proof of guilt, although
adequate if taken alone, is greatly outweighed by contrary proof.@  Johnson
v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).  A clearly wrong and unjust verdict occurs
where the jury=s finding Ashocks the conscience@ or Aclearly demonstrates bias.@  Santellan
v. State, 939 S.W.2d 155, 164‑65 (Tex. Crim. App. 1997).  We are authorized to disagree with the fact
finder=s verdict even if probative evidence exists that
supports the verdict.  Id. at 164;
see also Johnson, 23 S.W.3d at 7.

Appellant contends that the evidence is factually
insufficient to sustain his conviction because (1) there was no evidence
placing him alone with the child, (2) the evidence that other people had access
to the child supports an inference of innocence, and (3) the medical testimony
raises questions as to the integrity of the Atime-line@ used for determining the time Felicity=s injuries were inflicted.         








Given the evidence detailed in our legal sufficiency
analysis, and viewed in a neutral light, we cannot conclude that the proof of
guilt is so obviously weak as to undermine confidence in the jury=s determination or that the proof of guilt, although
adequate if taken alone, is greatly outweighed by contrary proof.  See Johnson, 23 S.W.3d at 11.  The jury is the exclusive judge of the
credibility of witnesses and of the weight to be given their testimony.  Barnes, 876 S.W.2d at  321. 
To the extent that the defense may have provided inconsistent medical
testimony pertaining to the Atime-lime,@ we note that the reconciliation of conflicts in the
evidence is within the exclusive province of the jury.  Wyatt v. State, 23 S.W.3d 18, 30 (Tex.
Crim. App. 2000).  Appellant=s challenge to the factual sufficiency of the
evidence is overruled. 

Appellant=s first issue is overruled.

 

II.  Testimony
of Investigator Ramiro Ruiz

 

By his second issue, Appellant contends that the
trial court erred in permitting Police Investigator Ramiro Ruiz to testify that
he believed appellant was guilty based upon the time Felicity=s injuries were inflicted.  In reviewing the admissibility of such
testimony, we review the trial court=s decision for abuse of discretion.  Powell v. State, 63 S.W.3d 435, 438
(Tex. Crim. App. 2001). 

Appellant complains of the following colloquy during
the State=s redirect of Police 

 

Investigator Ruiz: 

 

Question [Prosecutor]:          And based on the time that the injuries, the type of the
injuries, and the time that they occurred, who was the person that did this? 

 

[Defense Counsel]:   Objection,
Your Honor, that=s an improper question.  That is asking him toB 

 

[Prosecutor]:                          Judge,
first of allB 

 

[Defense Counsel]:               If
I can finish my objection. 

 

[Prosecutor]:                          He
is not allowed to get up and finish the objection. 

 

[Defense Counsel]:               Your
HonorB 

 

[Trial Court]:                           Sit
down, both of you.  You may answer, if
you know.








[Defense Counsel]:               May
I state my objection? 

 

[Trial Court]:                           No,
get a Bill of Review.  Sit down,
[counsel].  I already heard your
objection and I have overruled it.

 

[Prosecutor]:                          Based on all of the evidence, do you
have an opinion as to who was it that did this? 

 

[Investigator Ruiz]:                 [Appellant].

 

Defense counsel perfected a bill of exception with
regard to Investigator Ruiz=s answer. 
Counsel stated that the testimony elicited was improper witness
testimony pursuant to Texas Rule of Evidence 701.  See Tex.
R. Evid. 701.  Counsel then stated
that if the court impliedly characterized Ruiz as an expert, the testimony was
also improper expert testimony.  See Tex. R. Evid. 702, 703, 704.  Counsel also objected on grounds that the
prejudicial effect of the testimony outweighed any probative value.  See Tex.
R. Evid. 403.  The trial court
ruled that the testimony was admissible under rule of evidence 701, by which
opinions based on the perception of the witness and that are helpful to the
determination of facts are admissible.  








            On appeal, appellant argues that the
testimony was inadmissible because opinions on guilt are prohibited.  See Boyde v. State, 513 S.W.2d 588,
589-90 (Tex. Crim. App. 1974).  Appellant
contends that such opinions are inadmissible because they are not based on the
witness= rational perception of facts, are not helpful in
assisting the jury in factual disputes, and are merely legal conclusions that
amount to a witness choosing sides as to how the case should ultimately be
decided.  See Grass v. State, 730
S.W.2d 104, 105-06 (Tex. App.BTexarkana 1987, no pet.).  Appellant further contends that such
witnesses are in no better position than the jury to form such an opinion, and
that the opinion constitutes an appeal to sympathy and may cause the jury to
shift its responsibility to the witness. 
See id.  Moreover, he
argues that eliciting such an opinion, in and by itself, can result in harmful
error or contribute to harm in conjunction with other improper prosecutorial
actions or erroneous legal rulings.  Boyde,
513 S.W.2d at 590.             

The State contends that error, if any, is waived
because on cross-examination, and prior to the State=s re-direct examination of Investigator Ruiz,
defense counsel elicited the same testimony from Ruiz.  We agree. 
The following colloquy took place between defense counsel and
Investigator Ruiz:

[Defense Counsel]:   Without
the benefit of what somebody told you, of your own personal knowledge, you can=t say that either Claudette caused the injuries that
caused the death of Felicity or that Felipe Adriano did it, can you?

 

[Investigator Ruiz]:     In
regards to the injury to the child charge that I filed, based on the healing
fractures, which I would consider that to be old injuries on the child, baby
Felicity, and then based on my investigation and the outcome, after everything,
after I did everything, I came to the conclusion that it was [Appellant].  [Appellant] was the last person with baby
Felicity. 

 

After this exchange, no objection was lodged by
defense counsel. 








Assuming, without deciding, that the admission of
this testimony amounted to error, we must conduct a harm analysis and determine
whether the error, if any, affected appellant=s
substantial rights.  See Tex. R. App. P. 44.2(b); Johnson v.
State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998) (reviewing hearsay issue
as non‑constitutional error under rule 44.2(b) of the Texas Rules of
Appellate Procedure).  Because the same
question and answer came in as evidence without objection, the error, if any,
was harmless.  See Tex. R. App. P. 44.2(b); Mendoza v.
State, 69 S.W.3d 628, 633 (Tex. App.BCorpus Christi 2002, pet. ref=d) (holding AThe admission of the hearsay evidence was rendered
harmless by the introduction of the same or similar evidence without objection.@). 

We overrule appellant=s
second issue on appeal.

III. 
Admission of Photographs

In his third issue, appellant asserts that the trial
court erred in admitting State=s exhibits 16-31, which consisted of photographs
taken during Felicity=s autopsy, and State=s
exhibits 34-37, which depict Felicity lying in her hospital bed.  The State offered exhibits 16-31 during the
testimony of Dr. Fulgencio Salinas, the medical director of the laboratory at
Edinburg Regional Medical Center who performed Felicity=s autopsy. 
These exhibits were admitted over defense counsel=s objections that the photographs were Aoverly graphic and prejudicial that [they]
outweighed any probative effect based on [Texas Rule of Evidence] 403.@  See Tex. R. Evid. 403 (providing Aalthough relevant, evidence may be excluded if its
probative value is substantially outweighed by the danger of unfair prejudice,
confusion of the issues, or misleading the jury, or by considerations of undue
delay, or needless presentation of cumulative evidence@).  The trial
court reviewed the exhibits, overruled the objections, and admitted the
exhibits.  Appellant advances the same
arguments on appeal.








The admissibility of photographs over a challenge is
within the sound discretion of the trial court. 
Rojas v. State, 986 S.W.2d 241, 249 (Tex. Crim. App. 1998); Montgomery
v. State, 810 S.W.2d 372, 378‑80 (Tex. Crim. App. 1991) (op. on reh=g).  The trial
court=s decision will be reversed only if it was Aoutside the zone of reasonable disagreement.@  Narvaiz
v. State, 840 S.W.2d 415, 429 (Tex. Crim. App. 1992); Montgomery,
810 S.W.2d at 380.  We employ the
following four‑prong test in reviewing a trial court=s evidentiary ruling under rule 403: (1) the
probative value of the evidence; (2) the potential to impress the jury in some
irrational, yet indelible, way; (3) the time needed to develop the evidence;
and (4) the proponent=s need for the evidence.  Erazo v. State, 144 S.W.3d 487, 489
(Tex. Crim. App. 2004); Montgomery, 810 S.W.2d at 389‑90.  In the context of the admission of
photographs, we also consider the following factors: (1) the number of
photographs, (2) their size, (3) whether they are in color or black and white,
(4) whether they are gruesome, (5) whether the body depicted is clothed or
naked, and (6) whether the body has been altered by autopsy.  Erazo, 144 S.W.3d at 489. 








An examination of the record shows that Felicity=s autopsy photographs were described in the medical
examiner=s unchallenged testimony.  In Texas, photographs are generally
admissible when verbal testimony regarding the photographed subject is
admissible.  Chamberlain v. State,
998 S.W.2d 230, 237 (Tex. Crim. App. 1999); Jones v. State, 944 S.W.2d
642, 652 (Tex. Crim. App. 1996) (photograph admissible where forensic
pathologist=s verbal testimony about the same was admissible); Emery
v. State, 881 S.W.2d 702, 710 (Tex. Crim. App. 1994); Phipps v. State,
904 S.W.2d 955, 958 (Tex. App.BBeaumont 1995, no pet.).  Moreover, autopsy photographs are generally
admissible unless they depict mutilation of the victim caused by the autopsy
itself.  Rojas, 986 S.W.2d at
249.  Changes rendered by the autopsy
process are of minor significance if the disturbing nature of the photograph is
primarily due to the injuries caused by the crime.  Hayes v. State, 85 S.W.3d 809, 816
(Tex. Crim. App. 2002).  As long as
autopsy photographs aid the jury in understanding the injury and do not
emphasize mutilation caused by the autopsy, they are admissible.  Todd v. State, 911 S.W.2d 807, 809
(Tex. App.BEl Paso 1995, no pet.).  A photograph is not rendered inadmissible
merely because it is gruesome or might tend to arouse the passions of the jury,
unless it is offered solely for the purpose of inflaming the minds of the
jury.  Potter v. State, 74 S.W.3d
105, 112 (Tex. Crim. App. 2002); Ward v. State, 787 S.W.2d 116, 120
(Tex. App.BCorpus Christi 1990, pet. ref=d). When the power of the visible evidence emanates
from nothing more than what the defendant has done, the trial court has not
abused its discretion merely because it admits the gruesome photographs.  Sonnier, 913 S.W.2d at 519.  Therefore, the trial court did not abuse
its discretion in allowing the photographs.

Appellant also complains that exhibits 34-37, which
depict Felicity in her hospital bed, were erroneously admitted under rule
403.  See Tex. R. Evid. 403. 
However, other than a brief sentence mentioning his objection at trial,
appellant has failed to properly brief this issue.  Appellant=s
appellate brief complains only of the autopsy photographs, exhibits 16-31, and
does not explain how or why exhibits 34-37 are prejudicial.  Appellant has failed to provide a clear and
concise argument for the contentions made, with appropriate citations to
authorities and to the record.  See Tex. R. App. P. 38.1(h).  

We overrule appellant=s
third issue. 

IV.  Testimony
of Hilda Telles

In his fourth issue, appellant asserts that the
trial court erred in admitting the testimony and report of CPS abuse and
neglect investigator Hilda Telles. 
Defense counsel=s objections at trial were on hearsay grounds.  








A trial court=s admission or exclusion of hearsay evidence is
reviewed under an abuse of discretion standard. 
Coffin v. State, 885 S.W.2d 140, 149 (Tex. Crim. App. 1994).  We will find a trial court=s ruling on the admissibility of evidence to be
reversible error when the court acts without reference to any guiding
principles and appellant has been harmed. See Tex. R. App. P. 44.2(b); Solomon v. State, 49 S.W.3d
356, 365 (Tex. Crim. App. 2001); Montgomery, 810 S.W.2d at 380.  We will find no reversible error in the
improper admission of evidence if the same facts are admitted elsewhere without
objection.  Josey v. State, 97
S.W.3d 687, 698 (Tex. App.BTexarkana 2003, no pet.); Duncan v. State, 95
S.W.3d 669, 672 (Tex. App.B Houston [1st Dist.] 2002, pet. ref=d).  Of
course, to preserve a hearsay objection, a timely and specific objection to the
evidence must be made at trial.  Thornton
v. State, 994 S.W.2d 845, 853 (Tex. App.BFort
Worth 1999, pet. ref=d).

Hearsay is a Astatement, other than one made by the declarant
while testifying at the trial or hearing, offered in evidence to prove the
truth of the matter asserted.@  Tex. R. Evid. 801(d).  Defense counsel repeatedly objected on
hearsay grounds to Telles= testimony concerning what she learned during the
course of her investigation.   

On appeal, appellant asserts that Telles= testimony, which included information she received
from police officers and medical personnel, was inadmissible hearsay.[5]  The State responds that appellant=s objections were waived because the same evidence
was admitted elsewhere without objection. 
See Moore v. State, 999 S.W.2d 385, 402 (Tex. Crim. App.
1999).  We agree.








The Texas Court of Criminal Appeals has held that a
violation of the evidentiary rules resulting in the erroneous admission of
evidence is non‑constitutional error. 
See Johnson, 967 S.W.2d at 417 (applying rule 44.2(b) harm
analysis to the erroneous admission of hearsay evidence).  Furthermore, it is well established that the
improper admission of evidence does not constitute reversible error if the same
facts are proved by other properly admitted evidence.  See Anderson v. State, 717 S.W.2d 622,
628 (Tex. Crim. App. 1986) (en banc). 

We have reviewed the record and find that all of the
hearsay testimony to which defense counsel objected was introduced through
other witnesses without objection.[6]  Thus, even if the trial court erred in
allowing Telles= alleged hearsay testimony, we disregard the error
because it is merely cumulative of testimony that was admitted through the
un-objected to testimony of other witnesses. 
Therefore, appellant=s substantive rights were not affected.  See Tex.
R. App. P. 44.2(b); see also Couchman v. State, 3 S.W.3d 155,
161  (Tex. App.BFort Worth 1999, pet. ref=d).








At trial, defense counsel also objected to the
admission of Telles= report on hearsay grounds.[7]  The report was admitted over defense counsel=s objection under the rule of optional
completeness.  See Tex. R. Evid. 107.  Appellant contends that the report was
hearsay because it included information obtained from third-party witnesses
such as nurses, doctors, Claudette, appellant, unidentified family members, and
police investigators.  The State contends
that because, during trial, defense counsel attempted to impeach Telles with
affidavits attached to the report, the report was admissible under the rule of
optional completeness.








The rule of optional completeness provides that when
part of a conversation or writing is placed into evidence by one party, the
other party can introduce the rest of the conversation or writing into evidence
to explain the prior comments or otherwise make them fully understood.  Tex.
R. Evid. 107; Wright v. State, 28 S.W.3d 526, 536 (Tex. Crim.
App. 2000).  The purpose of rule 107 is
to reduce the possibility of the jury receiving a false impression from hearing
only a part of some act, conversation, or writing.  See Credille v. State, 925 S.W.2d 112,
116 (Tex. App.BHouston [14th Dist.] 1996, pet. ref=d).  For the
rule to apply, however, the matter must be Aopened
up@ by the adverse party.  See id.; see also Jones v. State,
963 S.W.2d 177, 182 (Tex. App.BFort Worth 1998, pet. ref=d) (stating the rule=s Apurpose is to allow one side to complete the picture
when the opponent has opened the door.@).  Here the
matter was Aopened up@ by defense counsel during cross-examination of
Telles.  On cross-examination, defense
counsel questioned Telles about how she reached the conclusions stated in her
report, and then attempted to impeach her by raising questions about the
affidavits which were attached to her report. 
The record reflects that the trial court warned defense counsel that the
entire report could be introduced under the rule of optional completeness.  On the State=s
re-direct, the report was admitted and read into the record.  Because defense counsel opened the door by
calling the accuracy of the report into question, the door was opened and the
report became admissible.  See Bunton
v. State, 136 S.W.3d 355, 367 (Tex. App.BAustin
2004, pet. ref=d) (finding that it is not error to admit hearsay
evidence in a criminal case over objection when it goes to clarify other
hearsay evidence elicited by the opposition). 
Accordingly, we hold that the trial court did not abuse its discretion
in admitting the report.[8]         We
overrule appellant=s fourth issue. 

The judgment of the trial court is affirmed. 

 

 

 

_______________________

DORI CONTRERAS GARZA,

Justice

 

Do not publish.                                              

Tex. R. App. P.  47.2(b)

Memorandum Opinion delivered and 

filed this the 31st day of August, 2005.











[1] Dr. Wilson Sy, the pediatric
neurologist, testified that Felicity=s injuries were inflicted approximately six to twelve hours
before his examination of her at 3:00 a.m. on June 6.    





[2] We disagree.  The State was only required to prove that
appellant was responsible for causing serious bodily injury to Felicity, not
that he had exclusive possession of her for an indefinite time period.  See Tex.
Pen. Code Ann. ' 19.02 (Vernon 2003); see also
Courson v. State, 160 S.W.3d 125, 128 (Tex. App.BFort Worth 2005, no pet.) (stating
that State is only required to prove that appellant was responsible for causing
serious bodily injury to child, not that he had exclusive possession of her for
an indeterminate period of time before taking her to the emergency room).  





[3] The record reflects that they
returned from H-E-B at 9:00 p.m.





[4] The record reflects that Claudette
went to Dairy Queen at about 9:10 p.m. and returned about fifteen to twenty
minutes later.   





[5] The complained-of testimony
elicited from Telles consisted of information she learned during the course of
her investigation. The testimony included information about a protective order
against appellant, and prior physical abuse by appellant against his wife.  It also included information obtained by
Telles from doctors as to the nature and severity of Felicity=s injuries, the amount and type of
force necessary to inflict those injuries, the causes of her death, and the
symptoms of SBS.                       





[6] Claudette testified about the
protective order and about being physically abused by appellant.  Several doctors testified about the nature
and severity of Felicity=s injuries, the amount and types of
force necessary to inflict those injuries, the causes of her death, and the
symptoms of SBS.    





[7] Appellant also complains that an
extraneous offense was admitted in the report. 
The record shows that Telles inadvertently read a portion of the report
which included reference to appellant=s prior conviction. 
Appellant, however, did not object to the admission of this
testimony.  Accordingly, he has failed to
preserve the issue for review.  See Tex. R. App. P. 33.1; see Blue v.
State, 41 S.W.3d 129, 131 (Tex. Crim. App. 2000) (en banc).  Nonetheless, before the report was tendered to
the jury, the paragraph containing language referencing appellant=s prior criminal charges was
redacted. 





[8] Appellant also complains that the
report was improperly admitted as a business report.  However, as explained in our disposition of
the issue, the report was properly admitted under the Rule of Optional
Completeness; therefore, we will not address this contention.