NO. 07-06-0218-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

JANUARY 14, 2008
______________________________

KAREN GORE, APPELLANT

V.

JAINABA FAYE, APPELLEE
_________________________________

FROM THE 99TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2004-527,298; HONORABLE WILLIAM SOWDER, JUDGE
_______________________________


Before QUINN, C.J., and CAMPBELL and HANCOCK,


 JJ.
OPINION
Â Â Â Â Â Â Â Â Â Â Appellant Karen Gore appeals from a judgment in favor of appellee Jainaba Faye
following a jury trial in a personal injury suit. Gore contends on appeal the trial court was
required by section 41.0105 of the Texas Civil Practice & Remedies Code


 to allow
evidence before the jury of payments and discounts applied on Fayeâs medical bills, and
erred by keeping this evidence from the jury. Finding no abuse of discretion in the courtâs
action, we affirm.
Background
Â Â Â Â Â Â Â Â Â Â Faye and Gore were the drivers of vehicles that collided in Lubbock, Texas. 
Seeking recovery for her personal injuries, and alleging Goreâs negligence proximately
caused her injuries, Faye brought suit against Gore. 
Â Â Â Â Â Â Â Â Â Â In her amended answer to Fayeâs suit, Gore plead that, pursuant to section 41.0105,
Fayeâs recovery for medical expenses was limited to the amounts of reasonable and
necessary medical expenses âwhich were paid and accepted rather than the total of the
charged medical expenses.â Alternatively, Gore plead, she was entitled to a credit against
any medical expense damage award for amounts ânot charged to [Faye], amounts written
off or discounted, or, in any event, in an amount equal to the difference between the total
charges and the sum which was paid and accepted as payment in full.â Gore made the
same allegations in a separate paragraph of her answer addressed âto the Court only.â
Â Â Â Â Â Â Â Â Â Â At trial, Faye presented, without objection, evidence of the amounts charged by four
healthcare providers for treatment of her injuries. The evidence was in the form of
statutory affidavits


 that included opinions the services were necessary and the charges
reasonable, and included itemized statements from the providers. The four providers, their
charges and services were University Medical Center (UMC), $573.80 for ambulance
services; Covenant Health System (Covenant), $2,690.30 for emergency medical
treatment; Lubbock Diagnostic Radiology, L.L.P., (Lubbock Radiology), $248.00 for x-ray
and diagnostic services; and Merritt Chiropractic, P.C. (Merritt), $4,574.00 for chiropractic
treatment. 
Â Â Â Â Â Â Â Â Â Â The itemized statement attached to the affidavit of Covenantâs custodian of records
was redacted to obscure entries reflecting a discount of $2190.30 and a payment of
$400.00 against the initial $2690.30 charge, and to obscure an entry showing the resulting
âofc balanceâ of $100.00. The statement attached to the affidavit from Lubbock Radiology
similarly was redacted to obscure entries showing an âadjustmentâ of $146.94 and a
payment credit of $101.46. As redacted, the statements showed the jury only the total
initial charges. The statements of UMC and Merritt contained no payment credits or
discounts.
Â Â Â Â Â Â Â Â Â Â The record indicates that, before and during trial, the parties and the court were
conscious of and concerned with the requirements of section 41.0105, and suggests that
the means of implementation of the statute were discussed with the court off the record. 
At a point during Fayeâs case in chief, the court conducted an off-the-record bench
conference. It then excused the jury, and Gore requested and was allowed to make an
offer of proof concerning the payments and discounts applied to the Covenant and
Lubbock Radiology charges. 
Â Â Â Â Â Â Â Â Â Â Goreâs counsel explained the purpose of the offer of proof: âif the court does not
allow the testimony into evidence in front of the jury, I would like to at least present it now
for the court to consider after the verdict and before a judgment is entered.â The court
discerned the basis of the offer was: âdue to some kind of contract or an agreement with
a health care provider that what was actually accepted in full is less than what was charged
Plaintiff; is that correct?â Goreâs counsel agreed with this assessment. 
Â Â Â Â Â Â Â Â Â Â Gore then called the records custodians for Covenant and Lubbock Radiology as
witnesses for the offer of proof. Each testified that Fayeâs charges were discounted
pursuant to a contract between the provider and Fayeâs health insurance company
FirstCare. Through these witnesses, Gore offered unredacted copies of the previously
admitted affidavits of services and charges of Covenant and Lubbock Radiology.


 
Â Â Â Â Â Â Â Â Â Â At the conclusion of the offer of proof, the court restated Goreâs position: âAnd then
he is making a motion to offer the testimony of [the records custodians] in front of the jury.â 
On the courtâs request for a response, Fayeâs counsel voiced an objection to the testimony
of the records custodians before the jury. The court then ruled:
The court is going to sustain her objection and overrule you, preventing you
from putting this in front of the jury. And the courtâs of the opinion, at this
time, until further guidance is given the court, that it is a post-verdict pre-judgment matter. And so the offer of proof will stand but I will not allow that
testimony in front of the jury. 
Â 
Â Â Â Â Â Â Â Â Â Â The following exchange then occurred:
Â 
[Goreâs counsel]: âOkay. And, Your Honor, in the alternative then, we would
ask the court to consider the testimony post-verdict pre-judgment.â
Â 
[The Court]: âYes, we will do that.â
Â 
Â Â Â Â Â Â Â Â Â Â * * *
[Fayeâs counsel]: âAnd, Your Honor, for clarification, defense exhibitsâI donât
remember the numbers, but those include information regarding
adjustments, will not be presented to the jury?
Â 
[The Court]: âThatâs right. That is just for the Judge before he
preparesâexecutes a judgment.â
Â 
Â Â Â Â Â Â Â Â Â Â At the charge conference, neither party objected to the proposed damage question
which in part inquired what amount of money would compensate Faye for âreasonable
expenses of necessary medical care actually incurred in the past.â The jury found each
party negligent, assessed fault at 25% to Faye and 75% to Gore, and awarded Faye $250
for past physical pain, $6,391.10 for past medical expenses, and zero for past lost wages.
Â Â Â Â Â Â Â Â Â Â Â After receipt of the verdict and discharge of the jury the court determined it was not
feasible to accurately offset the past medical charges according to Goreâs section 41.0105
evidence because the jury awarded an amount less than the total amount of charges
presented by Fayeâs affidavits.


 The court signed a judgment awarding Faye the full
amount of past medical expenses found by the jury, reduced by the percentage of fault the
jury attributed to Faye. 
Â Â Â Â Â Â Â Â Â Â Gore moved for a new trial asserting factual and legal insufficiency of the evidence
supporting the award of past medical expenses because of the limiting effect of section
41.0105 and abuse of discretion by the court for not admitting Goreâs section 41.0105
evidence before the jury. The motion for new trial was apparently overruled by operation
of law and this appeal followed.
Issue Presented
Â Â Â Â Â Â Â Â Â Â Gore brings a single issue on appeal:
âThe trial court erred in excluding properly offered exhibits and testimony
concerning the amounts of medical expenses actually paid and accepted by
Appelleeâs health care providers as payment in full.â
Â 
Â Â Â Â Â Â Â Â Â Â As noted, the trial court admitted Goreâs section 41.0105 evidence, but only for its
post-verdict consideration in fashioning a judgment. Goreâs argument in her brief makes
clear that her complaint is the trial court abused its discretion by not allowing her to present
the section 41.0105 evidence for the juryâs consideration in answering the past medical
expense damages question. Goreâs contention is that admission of the evidence before
the jury for that purpose was required by section 41.0105. She does not argue it was
admissible for any purpose other than implementation of that statute. 
Â 
Discussion
Â Â Â Â Â Â Â Â Â Â The admission and exclusion of evidence at trial is committed to the sound
discretion of the trial court. City of Brownsville v. Alvarado, 897 S.W.2d 750, 753 (Tex.
1995). See also Dow Chemical Co. v. Francis, 46 S.W.3d 237, 240 (Tex. 2001); Schroeder
v. Brandon, 141 Tex. 319, 172 S.W.2d 488, 491 (1943) (both noting great discretion vested
in trial court over conduct of trial). A trial court abuses its discretion when its ruling is
arbitrary, unreasonable or without reference to any guiding rules or legal principles. E.I.
du Pont de Nemours & Co. v. Robinson, 923 S.W.2d 549, 558 (Tex. 1995)
Â Â Â Â Â Â Â Â Â Â The correctness of Goreâs position that the trial court was required to admit her
section 41.0105 evidence before the jury is not apparent from the language of section
41.0105. The legislature enacted the section as an addition to chapter 41 of the Civil
Practice and Remedies Code, which chapter âestablishes the maximum damages that may
be awarded in an actionâ subject to its provisions. Tex. Civ. Prac. & Rem. Code Ann. Â§
41.002(b) (Vernon Supp. 2007). By its language the limitation on damages prescribed by
section 41.0105 is mandatory. But unlike other provisions of chapter 41, section 41.0105
contains no procedural direction for its application at trial. See, e.g., Tex. Civ. Prac. &
Rem. Code Ann. Â§ 41.008(a), (e) (Vernon Supp. 2007) (prescribing separate
determinations of economic and other compensatory damages, and prohibiting making
provisions known to jury); Tex. Civ. Prac. & Rem. Code Ann. Â§ 41.009 (Vernon 1997)
(requiring bifurcated trial on motion); Tex. Civ. Prac. & Rem. Code Ann.Â§Â§ 41.003(e) and
41.012 (Vernon 1997 and Supp. 2007) (mandating jury instructions in cases involving
claims for exemplary damages).
Â Â Â Â Â Â Â Â Â Â In their appellate briefs, the parties devote a good deal of attention to the question
whether introduction before the jury of evidence that Faye benefitted from her insurerâs
contractual agreements with Covenant and Lubbock Radiology runs contrary to the
collateral source rule.


 Gore contends that admission of such evidence does not violate
the collateral source rule.


 Review of the record convinces us that disposition of this
appeal does not require our evaluation of the impact of section 41.0105 on the collateral
source rule. This appeal presents only the narrow procedural question whether the trial
court was required to implement section 41.0105 through presentation of evidence to the
jury. Even if Gore is correct that admission of her section 41.0105 evidence would not
violate the collateral source rule, it is obvious that the admission of such evidence before
the jury in a personal injury case involves a significant departure from existing trial practice
in Texas. See, e.g., Taylor, 132 S.W.3d at 625 (âIt is generally considered error for
insurance coverage of either party to be mentioned by the other party during trial of a
personal injury cause of action.â (citations omitted)). Without a more explicit statutory
provision or guidance from our supreme court, we see no abuse of discretion in the trial
courtâs decision to apply section 41.0105 post-verdict.



Â Â Â Â Â Â Â Â Â Â Goreâs single issue is overruled, and the trial courtâs judgment is affirmed.
Â 


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â James T. Campbell

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice





















span.Heading2Char
 {mso-style-name:"Heading 2 Char";
 mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 2";
 mso-ansi-font-size:13.0pt;
 mso-bidi-font-size:13.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;}
span.Heading3Char
 {mso-style-name:"Heading 3 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 3";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;}
span.Heading4Char
 {mso-style-name:"Heading 4 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 4";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
span.Heading5Char
 {mso-style-name:"Heading 5 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 5";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;}
span.Heading6Char
 {mso-style-name:"Heading 6 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 6";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;
 font-style:italic;}
span.Heading7Char
 {mso-style-name:"Heading 7 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 7";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 font-style:italic;}
span.Heading8Char
 {mso-style-name:"Heading 8 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 8";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;}
span.Heading9Char
 {mso-style-name:"Heading 9 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 9";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 font-style:italic;}
span.TitleChar
 {mso-style-name:"Title Char";
 mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Title;
 mso-ansi-font-size:26.0pt;
 mso-bidi-font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;}
span.SubtitleChar
 {mso-style-name:"Subtitle Char";
 mso-style-priority:11;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Subtitle;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 letter-spacing:.75pt;
 font-style:italic;}
span.QuoteChar
 {mso-style-name:"Quote Char";
 mso-style-priority:29;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Quote;
 color:black;
 font-style:italic;}
span.IntenseQuoteChar
 {mso-style-name:"Intense Quote Char";
 mso-style-priority:30;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Intense Quote";
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
p.NewDocument, li.NewDocument, div.NewDocument
 {mso-style-name:"New Document";
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:12.0pt;
 mso-bidi-font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
span.BalloonTextChar
 {mso-style-name:"Balloon Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Balloon Text";
 mso-ansi-font-size:8.0pt;
 mso-bidi-font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-ascii-font-family:Tahoma;
 mso-hansi-font-family:Tahoma;
 mso-bidi-font-family:Tahoma;
 mso-bidi-language:EN-US;}
span.HeaderChar
 {mso-style-name:"Header Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Header;
 mso-ansi-font-size:11.0pt;
 mso-bidi-font-size:11.0pt;
 mso-bidi-language:EN-US;}
span.FooterChar
 {mso-style-name:"Footer Char";
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Footer;
 mso-ansi-font-size:11.0pt;
 mso-bidi-font-size:11.0pt;
 mso-bidi-language:EN-US;}
span.FootnoteTextChar
 {mso-style-name:"Footnote Text Char";
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Footnote Text";
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;
 mso-hansi-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
span.term1
 {mso-style-name:term1;
 mso-style-unhide:no;
 font-weight:bold;}
span.SpellE
 {mso-style-name:"";
 mso-spl-e:yes;}
span.GramE
 {mso-style-name:"";
 mso-gram-e:yes;}
.MsoChpDefault
 {mso-style-type:export-only;
 mso-default-props:yes;
 font-size:10.0pt;
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:Arial;
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:Arial;}
 /* Page Definitions */
 @page
 {mso-footnote-separator:url("07-08-0290.cr%20opinion_files/header.htm") fs;
 mso-footnote-continuation-separator:url("07-08-0290.cr%20opinion_files/header.htm") fcs;
 mso-endnote-separator:url("07-08-0290.cr%20opinion_files/header.htm") es;
 mso-endnote-continuation-separator:url("07-08-0290.cr%20opinion_files/header.htm") ecs;}
@page Section1
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:1.0in;
 mso-footer-margin:1.0in;
 mso-title-page:yes;
 mso-footer:url("07-08-0290.cr%20opinion_files/header.htm") f1;
 mso-paper-source:0;}
div.Section1
 {page:Section1;}
@page Section2
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:1.0in;
 mso-footer-margin:1.0in;
 mso-footer:url("07-08-0290.cr%20opinion_files/header.htm") f1;
 mso-paper-source:0;}
div.Section2
 {page:Section2;}
@page Section3
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:1.0in;
 mso-footer-margin:1.0in;
 mso-footer:url("07-08-0290.cr%20opinion_files/header.htm") f1;
 mso-paper-source:0;}
div.Section3
 {page:Section3;}
@page Section4
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:1.0in;
 mso-footer-margin:1.0in;
 mso-footer:url("07-08-0290.cr%20opinion_files/header.htm") f4;
 mso-paper-source:0;}
div.Section4
 {page:Section4;}
@page Section5
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:.5in;
 mso-footer-margin:.5in;
 mso-title-page:yes;
 mso-footer:url("07-08-0290.cr%20opinion_files/header.htm") f5;
 mso-paper-source:0;}
div.Section5
 {page:Section5;}
-->








NO. 07-08-00290-CR

Â 

IN THE COURT OF APPEALS

Â 

FOR THE
SEVENTH DISTRICT OF TEXAS

Â 

AT
AMARILLO

Â 

PANEL B

Â 



JUNE
16, 2010

Â 



Â 

THOMAS LEWIS, APPELLANT

Â 

v.

Â 

THE STATE OF TEXAS, APPELLEE 



Â 



Â 

 FROM THE 211TH DISTRICT COURT OF DENTON
COUNTY;

Â 

NO. F-2006-2346-C; HONORABLE L. DEE SHIPMAN, JUDGE



Â 



Â 

Before QUINN,
C.J., and CAMPBELL and HANCOCK, JJ.

Â 

Â 

MEMORANDUM OPINION

Â 

Â 

A jury convicted appellant Thomas
Lewis of aggravated sexual assault[1]
and indecency with a child[2]
and assessed punishment, enhanced by two prior felony convictions, at
consecutive life sentences.Â  Through two
points of error, appellant challenges the admission of evidence during the
punishment phase of trial concerning his positive HIV status.Â  Concluding the trial court did not err by
allowing admission of the evidence, we affirm the trial court=s judgment.

Background

Appellant was charged by indictment
with penetrating, with his finger, the female sexual organ of a child younger
than 14 years of age and not his spouse and, with the intent to arouse or
gratify his sexual desire, exposing his genitals to the same child.Â  The victim of his offenses was a ten-year-old
girl. 

At trial, the victim testified she
stopped by her grandfather=s recently vacated apartment on her
way home from school one day to see if items had been left behind.Â  Appellant walked by and asked if she wanted
to go inside her grandfather=s apartment.Â  She agreed and went with appellant to
retrieve the key. Â Once they were inside
the apartment, appellant told the girl to get into a closet.Â  He threatened to hit her and told her to pull
down her pants.Â  She complied.Â  With the two of them sitting facing each
other, appellant inserted his finger into the victim=s vagina.Â  While doing so, he masturbated until he
ejaculated.Â  He then allowed the victim
to leave.

The victim went home, visibly upset,
and told her mother and stepfather what happened.Â  The victim later identified appellant as the
person who assaulted her. She told police appellant was wearing purple shorts
when he assaulted her.Â  Police later
found purple shorts in appellant=s home. The shorts had a semen stain and a blood stain on
them.Â  








During the punishment phase of the
trial, the State introduced testimony indicating appellant told a police
officer he was HIV positive.Â  Appellant
objected to this testimony under Rules 401 and 403 of the Texas Rules of
Evidence.Â  The trial court overruled the
objection and allowed the officer to testify that appellant told her Ahe was HIV positive.@Â 
The State highlighted this fact, along with evidence of appellant=s extensive criminal history, to the
jury during closing punishment argument.Â 


On appeal, appellant reiterates his
Rule 401 and Rule 403 objections to the officerÂs statement.Â  Tex. R. Evid.
401, 403.Â  

Applicable Law

Texas Code of Criminal Procedure
article 37.07, Â§ 3(a), governs the admissibility of evidence at a trial's
punishment phase and grants the trial court
broad discretion to admit evidence that it deems relevant
to sentencing.Â 
See Tex. Code Crim.
Proc. Ann. art. 37.07, ' 3(a)(1) (Vernon 2007).Â 
Under the plain language of the statute, during the punishment
phase the State may offer evidence on any matter the court deems relevant to sentencing.
Tex. Code Crim. Proc. Ann. art. 37.07, Â§ 3(a)(1)
(Vernon 2007).Â  In ascertaining what is relevant
to sentencing,
the focus is on what is helpful to a jury in deciding an appropriate sentence
for a defendant. Erazo v. State, 144 S.W.3d 487, 491 (Tex. Crim.
App. 2004); Rodriguez
v. State, 163 S.W.3d
115, 118 (Tex. App.--San Antonio 2005), affÂd, 203 S.W.3d 837 (Tex.Crim.App.
2006). The Court of Criminal Appeals has
recognized that "relevance" in the punishment context is different than
"relevance" as defined in Texas Rule of Evidence 401
because sentencing presents different issues than rendering a
verdict on guilt or innocence. Rogers
v. State, 991 S.W.2d
263, 265 (Tex. Crim. App. 1999) (fact-finder in punishment chooses a sentence within a punishment range rather than deciding facts to
determine whether a defendant is guilty).Â 
Admissibility of evidence at the punishment phase
of a non-capital felony offense is a function of policy rather than relevancy
because, by and large, there are no discrete factual issues at the punishment
stage.Â  Id. Â Some of the policy
reasons to be considered when determining whether to admit punishment evidence include giving complete
information for the jury to tailor an appropriate sentence for the defendant;
the policy of optional completeness; and admitting the truth in sentencing.
Id. at 233-34
(citing Mendiola v. State, 21 S.W.3d 282, 285 (Tex. Crim. App.
2000)).








In accordance with this policy, the
Court of Criminal Appeals has stated that at the punishment phase of a
non-capital felony trial, evidence relating to the Acircumstances of the offense itself
or . . . the defendant himself@ before or at the time of the offense
may be admitted.Â  Miller-El v. State,
782 S.W.2d 892, 896 (Tex.Crim.App. 1990) (en banc); Stiehl v. State, 585 S.W.2d 716, 718 (Tex.Crim.App. 1979), cert. denied, 449 U.S. 1114,
101 S.Ct. 926, 66 L.Ed.2d 843 (1981).Â  One such circumstance is the degree of
the victim=s injury, including future
consequences due to the injury, Aso long as the fact finder may rationally attribute moral
culpability to the accused for that injury.@ Hunter v. State, 799 S.W.2d
356, 360 (Tex.App.BHouston [14th
Dist.] 1990, no pet.).Â  Courts have recognized that a
defendant=s HIV status is admissible as a Acircumstance of the offense@ in an aggravated assault case.[3]Â  See, e.g., Hunter v.
State, 799 S.W.2d 356, 359 (Tex.App.BHouston [14th
Dist.] 1990, no pet.). See also Suarez v. State, No. 14-03-00441-CR, 2004 WL 1660938 (Tex.App.BHouston [14th
Dist.] July 27, 2004, pet. ref=d) (counsel not ineffective for failing to object to
testimony about defendant=s HIV status because it was
admissible as a circumstance of the offense of aggravated sexual assault of a
child).

Even
where the trial court deems evidence relevant at the punishment stage, that evidence, upon objection,
must still withstand a Rule 403
analysis to be admissible. Rodriguez, 163 S.W.3d at 119. Texas Rule of Evidence 403 provides
that relevant evidence
"may be excluded if its probative value is substantially outweighed by the
danger of unfair prejudice." Tex. R. Evid.
403. The rule carries a presumption that relevant
evidence will be more probative than prejudicial, therefore favoring admission.
Jones v. State, 944 S.W.2d 642, 652 (Tex. Crim. App. 1996). Unfair prejudice can outweigh the probative value
where the evidence has a tendency to influence a jury's decision on an improper
basis. Rogers
v. State, 991 S.W.2d at 266. Rule 403
requires exclusion of evidence only when there is "clear disparity"
between the probative value and the degree of prejudice of the offered
evidence. Jones, 944 S.W.2d at 652. Unfair prejudice does not include
evidence that simply injures the opponent's case. Rogers,
991 S.W.2d at 266 (noting that
injuring the opponent's case is the central point of offering evidence).








A trial court=s admission or exclusion of evidence
is reviewed under an abuse of discretion standard.Â  See Mozon v.
State, 991 S.W.2d 841, 847 (Tex.Crim.App. 1999); Montgomery
v. State, 810 S.W.2d 372, 379 (Tex.Crim.App.
1991) (op. on rehÂg).Â 
An abuse of discretion occurs when the trial court acts arbitrarily,
unreasonably, or without reference to guiding rules or principles.Â  Montgomery, 810
S.W.2d at 380.Â  

Application

Appellant points to the single
statement in the testimony of one police officer that appellant told her he was
AHIV positive.@Â 
Appellant then focuses on part of the State=s closing argument:

When you get into punishment, you learn
who that man is that you=re punishing.That=s kind
of what we=ve seen here.Â 
Now, there was a little bit more about the crime that you learned in
punishment that you didn=t know
in sentencing, [sic] because not only do we have an aggravated sexual assault, we
have an aggravated sexual assault on a ten-year-old girl by a man who knew he
was HIV positive when he went forward to commit that assault.

Â 

Think about that.Â  Think about the
risks that he=s willing to place an innocent child
in for his own pleasure, because that=s the difference we see in these crimes and this crime today.

***

A ten-year-old girl should not be facing the decision of having to think
about the consequences of sexual contact.Â 
Her grandmother and mother should not have to have a conversation with
her or anybody else about what does it mean that my child possibly could have
HIV?Â  Those are questions that this
little girl does not deserve to face.

And those are the questions.Â  Her life, her future, her relationships, all are at risk because
this man decided that for his own personal benefit, his moment of enjoyment,
her entire life was worth risking.Â  That
is what you are deciding on today.Â  

Appellant contends evidence of his
HIV-positive status was irrelevant absent an indication the victim actually was
exposed to the virus or could have contracted it based on appellant=s actions.Â  He points out no other evidence concerning
HIV was introduced.Â  There was no medical
testimony presented and no medical records were introduced showing appellant
had the disease.[4]Â  No evidence explained that the contact
between appellant and the victim exposed her to a risk of HIV infection.

Without such evidence, appellant
argues, evidence of his mere volunteered statement that he is ÂHIV-positiveÂ
was irrelevant.Â  In contrast to the lack
of such evidence here, appellant points to the evidence in Hunter, 799 S.W.2d at 360, which included transfer of ejaculate
into the victimÂs mouth and genital area, and partial penetration of the
childÂs vagina causing lacerations that bled.Â 
Additionally, testimony explained how those events could infect the
victim.Â  Id. at 359-60.Â  Only the presence of such evidence, appellant
argues, makes a defendantÂs HIV status a circumstance of the offense of viable
concern at the punishment stage for aggravated sexual assault.Â  

We agree with the State that the
evidence was properly admitted.Â  Even
without medical evidence to verify it, appellantÂs volunteered statement has
probative value to show he was infected by the HIV virus when he sexually
assaulted the child, and knew it.Â  Such
evidence is relevant as a circumstance of the offense that the jury could
consider in assessing punishment.Â  See Tex. Code Crim. Proc. Ann. art. 37.07, ' 3(a)(1)
(listing circumstances surrounding the convicted offense as a type of evidence
admissible at punishment); Hunter, 799 S.W.2d at 360 (whether defendant
was infected with AIDS virus was admissible as a Acircumstance of the offense@ at punishment stage for aggravated sexual assault). 

The court in Atkins
v. State, No. 05-07-00586-CR, 2008 Tex.App. LEXIS 5407 (Tex.App.BDallas July 23, 2008, pet. ref=d) (mem.
op., not designated for publication) found evidence of the defendantÂs HIV
status relevant to sentencing as a circumstance of the offense of attempted sexual
performance of a child, despite the lack of evidence of any actual sexual
contact.Â  Atkins supports the StateÂs argument the jury may consider, as a
circumstance of the offense, that appellantÂs recognized HIV-positive status
placed the victim of his sexual assault at risk of infection, whether or not
the evidence shows any actual transmission of body fluids in a manner likely to
infect.

Moreover,
the record here is not devoid of evidence that appellantÂs assault carried an
actual risk of transmission of infection.Â 
Appellant placed his finger inside the victim=s
vagina and testimony from the nurse who conducted the sexual assault
examination indicated the victimÂs vaginal opening and hymen were red and
irritated consistent with such contact.Â  Appellant
also ejaculated near the victim and had a blood stain and a semen stain on the
shorts he was wearing.Â  No such stains
were found on the victim=s clothing but the nurse did
indicate Aa
light brown discharge from [the victim=s]
vaginal area.@Â  While appellant contends on appeal there is
no evidence the victim bled, the jury could have inferred from this evidence
that she did bleed at least to a slight degree. This evidence is closer to that
found in Hunter than appellant
argues.Â  

Further,
as have other courts, we find the probative value of evidence of appellantÂs
HIV status is not substantially outweighed by the danger of unfair prejudice or
distraction of the jury from its task of fashioning an appropriate sentence.Â  See Hunter, 799
S.W.2d at 360; Atkins, No. 05-07-00586-CR, 2008 Tex.App. LEXIS 5407 at * 19.








Â We note also the jury had before it evidence
of appellant=s prior six criminal convictions,
committed over a twenty-eight year period, and evidence of the years appellant
spent in prison for each of these offenses.Â 
The State highlighted the convictions in its closing argument.Â  The jury also had before it evidence that at
the time of the present offense, appellant had an outstanding parole violation
warrant.Â  

We find the trial court did not abuse
its discretion in allowing the police officer to testify about appellant=s statement to her concerning his HIV
status.[5]Â  We overrule each of appellant=s two issues and affirm the judgment
of the trial court.

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â  Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  James
T. Campbell

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Justice

Â 

Do not publish.











[1]Â  See Tex. Penal Code Ann. ' 22.021 (Vernon
2007).





[2]Â  See Tex. Penal Code
Ann. ' 21.11 (Vernon
2007). 





[3] Other courts have characterized this type
of evidence as Avictim impact evidence@ that is relevant
to sentencing.Â  Victim impact evidence
serves to show the circumstances of the offense and is relevant to sentencing
under article 37.07.Â  See
Tex. Code Crim. Proc. Ann. art. 37.07 (Vernon
2007); Jones v. State, 963 S.W.2d 177, 183 (Tex.App.BFort
Worth 1998, pet. ref=d), quoting
Murphy v. State, 777 S.W.2d 44, 63 (Tex.Crim.App.
1988); Brooks v. State, 961 S.W.2d 396, 398-99 (Tex.App.BHouston
[1st Dist.] 1997, no pet.).Â 
This type of evidence bears on the defendant=s personal
responsibility and moral guilt and is thus relevant to punishment issues.Â  See Jones, 963 S.W.2d at 182-83, citing
Stavinoha v. State, 808 S.W.2d 76, 78-79 (Tex.Crim.App. 1991) and Miller-El, 782 S.W.2d at
897.Â  See also Martinez v. State,
No. 05-03-01243-CR, 2004 WL 2378359 (Tex.App.BDallas
Oct. 25, 2004, no pet.) (mem. op., not designated
for publication) (concluding evidence concerning
appellant=s HIV status and awareness was evidence
related to the circumstances of the aggravated sexual assault offense and was
admissible as victim impact evidence).

Â 





[4]Â  The record reflects appellant=s counsel conceded
during closing argument at the punishment phase that appellant is AHIV positive, so
he=s going to be
dying, maybe sooner than his normal life span would be...he=s got to be
dealing with HIV, AIDS, while he=s serving the
sentence.@Â  Â Â Â Â Â Â  





[5]Â 
Given
our disposition herein, we do not reach appellant=s contentions that
he was harmed by the trial court=s admission of the
testimony.Â  Tex. R. App. P. 47.1.

10